**STATE of Minnesota, Respondent,**

v.

**David Russell KRAUSHAAR, Appellant.**

**No. C4–89–1762.**

Court of Appeals of Minnesota.

Aug. 21, 1990.

Review Granted Oct. 18, 1990.

Hubert H. Humphrey, III, Atty. Gen., Thomas Foley, Ramsey County Atty., Steven C. DeCoster, Asst. County Atty., St. Paul, for State of Minnesota, respondent.

John M. Stuart, State Public Defender, Lawrence Hammerling, Deputy State Public Defender, Minneapolis, for David Russell Kraushaar, appellant.

Considered and decided by HUSPENI, P.J., and PARKER and NORTON, JJ.

## OPINION

NORTON, Judge.

Appellant challenges on three grounds his conviction, after a jury trial, of criminal sexual conduct in the second degree. Appellant argues that the admission of expert testimony interpreting two drawings was error. Appellant also argues that when the jury, during its deliberations, requested to review a videotape of a medical expert interviewing the child, the trial court erred in giving the videotape to the jury for its own review while refusing review of other testimony. Finally, appellant argues that the evidence was insufficient to sustain his conviction. We reverse and remand for a new trial.

## FACTS

Appellant David Kraushaar ("Kraushaar") lived with Sharon Schroeder, now Sharon Armstrong ("Armstrong"), during 1983 and 1984. Their daughter, M.K., was born on January 21, 1984, but Kraushaar and Armstrong never married. In the fall

of 1984, Armstrong moved out leaving M.K. with Kraushaar. Custody and paternity issues were resolved through adjudication with the result that Kraushaar received a joint legal and sole physical custody of M.K.

Armstrong had previously challenged Kraushaar for custody of M.K., without success. In 1986, shortly after losing one such challenge, Armstrong alleged that Kraushaar was physically or sexually abusing M.K. These claims were investigated and found to be unsubstantiated. Kraushaar retained custody, under court supervision.

On August 30, 1988, Armstrong's last attempt to gain custody of M.K. was refused. Approximately six weeks later, Armstrong reported to child protection authorities that she suspected sexual abuse of M.K. by Kraushaar. After child protection became involved, M.K. was removed from Kraushaar's home and placed in temporary foster custody in the home of Julie and Mike Kennedy.

Mary Earl, a Ramsey County child protection worker, visited M.K. to clarify whether it was her father, Kraushaar, or Armstrong's husband who was accused. M.K. informed her that it was "Daddy Dave" (Kraushaar). Based solely upon the information provided by Earl, the Community Human Services Department filed a child in need of protective services (CHIPS) petition. The day after the petition was granted, Earl took M.K. for a physical examination by Dr. Carolyn Levitt.

Before the physical examination began, Levitt interviewed M.K. This interview was recorded on a videotape which was entered into evidence and played during trial. This videotape was requested by the jury for replay, creating one of the issues on appeal. Dr. Levitt's physical examination of M.K., which was not recorded, revealed no physical indication of any type of sexual abuse.

On December 5, 1988, Kraushaar was charged by complaint with criminal sexual conduct in the second degree. The original complaint charged that the abuse occurred between September 1986 and October 1988.

Within the next two weeks M.K. was released from foster care to the temporary physical custody of Armstrong, her mother. Permanent custody was deferred dependent upon the outcome of the criminal case. On the date that trial began, March 28, 1989, the complaint was amended to charge that the abuse occurred between January 1988 and October 1988, during which time M.K. was four years old.

Before the trial began, a competency hearing was held in chambers. The trial court determined that M.K., by then aged 5, was competent to testify truthfully. In addition to M.K.'s testimony, the state introduced Julie and Mike Kennedy, the foster parents; Armstrong, the natural mother; the investigating deputy sheriff from Ramsey county who interviewed M.K., Armstrong and Kraushaar; Mary Earl, the Ramsey County protection worker; Dr. Levitt; the social worker who prepared the CHIPS petition; and a psychologist, Ann Greenwald, who gave testimony interpreting two drawings made by M.K. and entered into evidence. Her testimony is the subject of the second issue on appeal.

Kraushaar testified on his own behalf as did his parents, with whom he and M.K. had been living. Among others testifying in his defense was the former family court officer who had supervised custody after the previous allegation of abuse, but who was never contacted by the sheriff.

Kraushaar has argued that through normal daily care of his daughter he has probably touched her genital area, but that any such touching is nonsexual and therefore lacking in sexual or aggressive intent, a required element of the crime. He maintains that Armstrong 'coached' M.K. because no other method of gaining custody had been successful. Kraushaar objected to admission of the psychologist's analysis of M.K.'s drawings. He also objected to allowing the jury to conduct its own review of the videotaped interview of M.K. by Dr. Levitt. Kraushaar also challenges the sufficiency of the evidence to support his conviction.

## ISSUES

1. Did the trial court err in admitting the psychologist's analysis of the drawings?

2. Did the trial court err in providing the videotape and equipment to the jury for their own unsupervised review while denying their inquiry about transcripts?

3. Is the evidence sufficient to sustain beyond a reasonable doubt Kraushaar's conviction?

## ANALYSIS

### I.

██ Kraushaar challenges the admission of expert testimony interpreting M.K.'s drawings on the grounds that this technique is not generally accepted in the scientific community as reliable. The test developed in *Frye v. United States*, 293 F. 1013 (D.C.Cir.1923) and rephrased in *State v. Mack*, 292 N.W.2d 764, 768 (Minn.1980) governs the admissibility of novel scientific evidence. *State v. Schwartz*, 447 N.W.2d 422, 424 (Minn.1989). In Minnesota, the *Frye* standard requires that such evidence be generally accepted as reliable in its particular scientific field, if it is to be admitted against a criminal defendant. *Id.*

██ Where a scientific method is sufficiently established to be admissible, the testing must nonetheless be performed within the appropriate and generally accepted protocol. *See State v. Fenney*, 448 N.W.2d 54, 60 (Minn.1989) (electrophoretic blood type comparisons performed and checked pursuant to protocol). No scientific protocol for interpreting these drawings was established.

██ The qualification of an expert is within the sound discretion of the trial court and will be reversed only where that discretion has been abused. *State v. Davis*, 422 N.W.2d 296, 298 (Minn.App. 1988). The state argues that because Kraushaar challenged the expert's qualifications and foundation, but did not challenge the scientific community's consensus on the type of analysis offered, the *Frye* issue was not preserved for appeal. How-ever, where the error is one of "fundamental law" or "plain error affecting substantial rights," the reviewing court may consider an improperly preserved claim. *Fenney*, 448 N.W.2d at 61 (considering improperly preserved claim that photo identification was impermissibly suggestive).

The state's witness, Ann Greenwald, is a licensed psychologist working toward her doctorate in some unspecified child abuse field. She testified that in her opinion, M.K.'s drawings depicted male genitals and demonstrated that M.K. had been sexually abused. Kraushaar objected to Greenwald's qualifications and foundation because Greenwald had never met or interviewed M.K. and because Greenwald had not yet completed her doctorate. Kraushaar's objections were overruled. Greenwald testified that according to a study she had recently read in a *pediatric* journal, children for whom abuse has been substantiated are 6.4 times more likely to have genitals in their pictures than children who have not been abused. She also testified that in her opinion the behavior described to her and attributed to M.K. was of a 'cluster' of behaviors that indicates sexual abuse.

M.K. had apparently identified one picture as a drawing of Kraushaar, and the other as depicting her stepfather. Greenwald never interviewed M.K. When asked whether the use of a different color to depict the "genitals" in Exhibit 1 was significant, Greenwald replied that she did not know and would have to ask the child. Although she is a licensed psychologist, Greenwald demonstrated no particular expertise in diagnosing accurately children she has never met by merely examining selected drawings and hearing opinion-laden characterizations of their behavior.

Greenwald also testified that because interpretation of drawings formerly was employed to estimate children's intelligence, a method she claimed was now discredited, many psychologists consider all such analysis with "a grain of salt." She testified that although the use of drawings to estimate intelligence has dubious merit, most psychologists place a great deal of value on

the "stories" that children's drawings tell. She said that such interpretation "is not a science, such as taking blood pressure; you don't get numbers off it." This contradicts her testimony that children who have been sexually abused are 6.4 times more likely to draw genitals.

■ Because such statistics are likely to produce a "potentially exaggerated impact on the trier of fact," Greenwald's testimony must have had a significant impact on the jury. *State v. Joon Kyu Kim,* 398 N.W.2d 544, 548 (Minn.1987) (quoting *State v. Boyd,* 331 N.W.2d 480, 482 (Minn.1983)). Kraushaar did not seek a *Frye* hearing to consider the scientific admissibility of Greenwald's testimony. We do not order one now because we reverse and remand for a new trial. However, we agree that the admissibility of this 'scientific' evidence is a matter for a *Frye* hearing, if this evidence is to be used in a new trial.

## II.

■ Kraushaar also challenges the trial court's responses to the jury's requests to review evidence. The trial court has broad discretion regarding jury requests to review evidence. *State v. Daniels,* 332 N.W.2d 172, 176–77 (Minn.1983). Although not obligated to grant all jury requests, a trial court's blanket rule against granting jury requests to review testimony is improper. *State v. Rean,* 421 N.W.2d 303, 306 (Minn.1988). If a jury requests review of evidence, the jurors *shall* be conducted to the courtroom and may have requested testimony reread and may re-examine requested materials. Minn.R.Crim. P. 26.03, subd. 19(2)1 (emphasis added). Furthermore, while the trial court need not submit evidence beyond that specifically requested, it may have the jury review other evidence so as to avoid giving undue prominence to the evidence requested. Minn.R. Crim. P. 26.03, subd. 19(2)2.

After the jury retired to deliberate, it sent out a note which stated "would like TV to review film" and "are trial transcripts available for jury to review?" (It also sought additional guidance in defining 'sexual or aggressive intent,' a matter not at issue here.) The "film" was actually the videotape interview of M.K. by Dr. Carolyn Levitt, the pediatrician who also performed the medical examination of M.K. which was not recorded. This tape, received as an exhibit, was admissible under the statutory hearsay exemption for out-of-court corroborative statements. Minn.Stat. § 595.02, subd. 3 (1988). Hearsay is testimony. Over Kraushaar's objection, the trial court decided to deliver the videotape and equipment to the jury for it to conduct its own review of the videotape. The trial court stated, "As to the second question * * * I do not intend to allow the jury to have transcripts since transcripts are not available and I do not think it would be appropriate to allow them to use them in any event."

Kraushaar objected to the trial court's decision on the grounds that the videotape was also testimonial evidence, because it contained an interview between Dr. Levitt and M.K. He argued that the trial court was permitting the jury to focus on and emphasize portions of the testimony. Kraushaar's objections were overruled.

This court recently considered a similar issue in *State v. Ross,* 451 N.W.2d 231 (Minn.App.1990), *pet. for rev. denied* (Minn. Apr. 13, 1990), *petition for cert. filed* June 11, 1990. In that case, the jury was permitted to review videotapes of a child's interview with Dr. Levitt and of her trial testimony (which was videotaped) and also to have read to them the *entire* testimony of the child and of Dr. Levitt. This court held that a defendant can hardly challenge the *granting* of such a request "unless it unfairly highlights a portion of the evidence." *Id.* at 237. A court may abuse its discretion to a defendant's prejudice when ruling that *no* testimony may be reread. *Id.* (citing *State v. Spaulding,* 296 N.W.2d 870, 878 (Minn.1980)). In *Ross,* the trial court successfully balanced the review and thus did not unfairly highlight a portion of the evidence. Granting that broad request simply enabled the jury to more carefully evaluate the evidence. *Ross,* 451 N.W.2d at 237.

The dissent minimizes the distinction between this case and *Ross* by characterizing the *Ross* review as more damaging because it involved a greater quantity of "state's" evidence. We disagree that cross-examination qualifies as state's evidence, and note that the error avoided in *Ross* was the unfair highlighting of a *portion* of the evidence. *Id.*

The dissent argues that entry of this videotape as an exhibit is dispositive of whether the "undue prominence" test should apply under *Ross* and Minn.R.Crim. P. 26.03. We disagree. Like a deposition, this videotape contained testimony. Like a deposition, the documentation of this testimony was entered into evidence as an exhibit. Depositions are specifically excepted from the exhibits which the trial court shall permit the jury to take with it to the jury room. Minn.R.Crim. P. 26.03, subd. 19(1). Like a deposition, jury review of this videotape testimony should have been conducted in the courtroom with appropriate safeguards to avoid giving undue prominence to the evidence requested. Minn.R.Crim. P. 26.03, subd. 19(2).

The trial court specifically indicated that it did not think it would be appropriate to allow the jury to review testimony. Then, instead of conducting review of the videotape in the courtroom, the trial court permitted the jury to conduct its own review. This ruling unfairly highlighted a portion of the evidence. The error recognized and avoided in *Spaulding, Rean,* and *Ross* was committed here. The unfavorable evidence was highlighted for the jury without the balance and fairness afforded by broader testimonial review. This error requires reversal because there was a reasonable likelihood that it substantially affected the verdict. *State v. Glidden,* 455 N.W.2d 744, 747 (Minn.1990).

### III.

Kraushaar argues that the evidence was insufficient to prove beyond a reasonable doubt that he touched his daughter intimately with sexual or aggressive intent. *See* Minn.Stat. § 609.343, subd. 1(g) (1988) and § 609.341, subd. 11(b) (1988). On re-

view, this court must determine whether, given the facts in the record and the legitimate inferences which can be drawn from those facts, the jury could reasonably conclude that Kraushaar was guilty as charged. *State v. Merrill,* 274 N.W.2d 99, 111 (Minn.1978). This court must view the evidence in the light most favorable to the state, assume that the jury believed the state's witnesses and assume that the jury disbelieved contradictory evidence. *State v. Ulvinen,* 313 N.W.2d 425, 428 (Minn. 1981).

Five-year-old M.K. testified in response to a question, "What did your daddy do to you?" that "it's hard to tell, he touched me where he's not supposed to touch me." She indicated that it was part of her tummy and then said "He touched me right on my butt." She said its where "you go potty with it." M.K. testified that her father touched her with his hands while she was in his bed or was in her bed sometime during the nighttime or in the morning. On cross-examination, M.K. also testified that her father and grandfather and grandmother may have put medicine on her butt when she had a rash.

Julie Kennedy, with whom M.K. was placed in temporary foster custody, testified that M.K. asked her, "Nobody is supposed to touch nobody here are they?" while pointing to her vaginal area. She testified that she asked M.K. whether anyone had ever touched her there and that M.K. responded that her daddy had. Julie and her husband, Mike Kennedy, both characterized M.K. as unusually affectionate toward males and flirtatious. On cross-examination, both admitted that they had not realized or considered that M.K. had been raised by her father when they interpreted her affection toward males.

M.K.'s mother, Armstrong, testified that M.K. was laying on the couch watching television with her legs spread when she asked her mother to play with her butt. She testified that when asked "who plays with your butt" M.K. answered "daddy does." She said that M.K. became silly and goofy, would not respond to further questions and left the room. Armstrong testi-

fied that M.K. then drew the two pictures which were entered into evidence as Exhibits 1 and 2 and analyzed by Greenwald. Armstrong testified that she was not concerned until after her husband and mother-in-law indicated that the pictures seemed to graphically depict male genitals. She testified that she then became concerned and contacted their family court social worker. That social worker recommended that M.K. be examined by Dr. Levitt.

Ramsey County Deputy Sheriff Gilbert Schroepfer testified that he met with M.K. once at the Kennedy foster home for the purposes of establishing who she alleged had touched her. He testified that he asked M.K. whether she remembered seeing Dr. Levitt and telling Dr. Levitt that she had been touched by her daddy. He testified that M.K. responded "Yeah, he touched me right here and it hurt" while pointing to her groin. He testified that he asked her which daddy it was and that she responded, "Daddy Dave." He asked her if she knew who John Armstrong was; she replied John was married to her mother and that John never touched her or did anything that hurt her.

Mary Earl, a senior child protection worker for Ramsey County Human Services, next testified that after receiving a report of possible sexual abuse, she met with M.K. to determine to which daddy M.K. was referring. She also transported M.K. to Dr. Levitt and to visitation with Kraushaar. Mary Earl had also taken the report from Armstrong and met with her.

Dr. Carolyn Levitt testified that the medical examination of M.K. was normal, that the hymen was intact and that the tissues around the vaginal and anal openings were normal. She testified that M.K. said it hurt when she went potty after her daddy touched her and that the medical significance of this was that the area around the urethra may have been abraded or irritated.

Dr. Levitt also testified that as she examined M.K., she would touch her and ask her whether she remembered being touched there. She said that M.K. responded that her daddy had touched her clitoris, but denied that her daddy had touched her vaginal or anal areas. She said that in response to vaginal touch, M.K. volunteered that she touched herself there. Dr. Levitt also testified that no germ cultures were taken because there was no indication of penile contact or any sort of penetration.

The videotape interview was then played in court. Dr. Levitt is experienced in these examinations and has apparently developed a routine, which she maintained when interviewing M.K. The tape demonstrates suggestion and a lack of flexibility in interacting with the child. Dr. Levitt created an example designed to establish the concept of "hurt" and introduced the association of "hurt" with "touch." M.K. then agreed that it hurt when her daddy touched her, apparently the first time she had made that claim.

On cross-examination, Dr. Levitt testified that she also believes that being touched in the same place will cause a child to remember having been touched there before. She interpreted M.K.'s responses as indicating that Kraushaar had touched M.K.'s clitoris but not her vagina or anus. Dr. Levitt testified that she based her conclusion 90% on the history provided her by M.K. and only 10% on her physical examination. The physical examination revealed no evidence, but Dr. Levitt testified on redirect that such a medical examination is not inconsistent with abuse. Kraushaar's objections, that because Dr. Levitt is not an expert on the truthfulness and untruthfulness of children and that she is not competent to conclude based on history that M.K. was abused, were overruled.

Ann Greenwald, the licensed psychologist whose interpretation of M.K.'s drawings was discussed at length above, testified next. Greenwald's testimony that the drawings depict genitals and demonstrate sexual abuse was probably given great weight by the jury.

Kraushaar testified in his own defense. He explained the history of the custody and visitation battles Armstrong waged against him for M.K. Kraushaar testified that he told the investigators that Armstrong had

threatened to do everything in her power to get custody of M.K. He indicated that in his opinion these allegations were concocted by Armstrong in an attempt to gain custody which had otherwise been denied. Kraushaar testified that through caring for his daughter, changing her, cleaning her and carrying her, he assumed he had touched the parts in question but that he had never touched her intimately with sexual or aggressive intent.

Armstrong had once made a suicide attempt while responsible for M.K. during a scheduled visit and the social worker who counseled her afterward was the next to testify. She stated that Armstrong left M.K. believing she would be able to obtain custody later and that her bond would be intact with her daughter. The counselor testified that Armstrong later was surprised that M.K. did not remember her as well as she thought she would.

The evidence in this case is all based upon M.K.'s vague statements, testimony by others that M.K. made those statements and her father's denial. Her statements are not detailed or specific enough to clearly implicate sexual activity. We recognize that whenever allegations of child sexual abuse are made, the system is confronted with a dilemma: on the one side is a child who must be protected; on the other side stands the accused, entitled to due process, who must not be unfairly convicted. We must balance those considerations and view the evidence favorably to the verdict when we conduct our review.

When viewing the evidence most favorably to the verdict, we hold that it is insufficient to support the conclusion, beyond a reasonable doubt, that Kraushaar touched his daughter intimately with sexual or aggressive intent. The jury requested further instruction on this point but received little assistance. Instead, it was given that videotape in which the doctor introduced the concept of hurt. This undoubtedly precipitated the jury's verdict.

In another case, with substantial evidence, we could affirm this conviction on the grounds that the errors were harmless, not prejudicial. However, the standards employed by the juvenile protection system in determining whether a child should be removed from a home are irrelevant to the burden of proof in a criminal trial. The facts of this case distinguish it from those in which we have affirmed convictions despite errors during trial. Here, the evidence was weak, the errors were many and they were not harmless. Kraushaar is entitled to a new, and fair, trial.

## DECISION

The trial court erred in admitting Greenwald's testimony over Kraushaar's repeated objections. Because she never met the child, the objections to foundation should have been sustained. The trial court erred when handling the jury's questions during deliberations, particularly in permitting self-directed review of the videotaped testimony and in denying other testimonial review. The evidence is insufficient to support the conviction.

Reversed and remanded.

HUSPENI, J., dissents with an opinion.

HUSPENI, Judge (dissenting)

I respectfully dissent and would affirm appellant's conviction. I share the majority's observation that the system is faced with a dilemma when sexual abuse of a child is alleged. In addition, I believe the dilemma is even greater when the alleged perpetrator in a charge of sexual abuse is a natural parent in a family torn by the strife of the breakdown of the relationship of a child's parents. However, I feel compelled to disagree with the majority's analysis of the issues and with its ultimate determination that a new trial is needed.

## I.

For the sake of further analysis, I agree with the majority that Ann Greenwald's testimony, purporting to interpret the drawings of the minor child, was erroneously received into evidence. However, I do not believe that permitting such testimony was error of such magnitude as to require a new trial.

Appellant's primary challenge of Ann Greenwald concerned her qualification as an expert. Although that challenge was unsuccessful, full cross-examination of this witness was demonstrated in 38 pages of the trial transcript.

## II.

Appellant stipulated to entry of the videotape as an exhibit. Under the rules, exhibits generally go to the jury. Minn.R. Crim. P. 26.03, subd. 19(1). Thus, appellant's stipulation does not strongly argue in favor of finding submission of the tape to the jury to be error.[1]

I submit that the question of whether certain evidence received "undue prominence" has merit only in those cases in which the challenged evidence was not properly available to the jurors as an exhibit. The record before us in this matter does not demonstrate that the videotape was received as anything other than an exhibit.

Further, the videotape had essentially the same content (that appellant abused M.K.) as the testimony of a number of state witnesses, including Dr. Levitt and the victim herself. Therefore, I conclude that by permitting the jury to view the challenged videotape, the trial court at worst permitted the jury to consider cumulative evidence.

Also, if the majority is correct that the videotape "demonstrates suggestion and a lack of flexibility [during Dr. Levitt's] interacting with the child," the feared undue emphasis on the tape would also emphasize the questionable nature of the interview, potentially discrediting both the interview and Dr. Levitt's subsequent testimony based on that interview. Thus, the result of sending the tape to the jury would weaken rather than strengthen the state's case.

Finally, in *State v. Ross*, 451 N.W.2d 231 (Minn.App.1990), *pet. for rev. denied*

(Minn. Apr. 13, 1990), a similar sexual abuse case cited by the majority, the jury requested review of the victim's testimony, the examining doctor's testimony and the videotape of the doctor's interview of the victim. All requests were granted and this court affirmed, stating:

> Since the jury's broad request did not unfairly highlight a portion of the evidence, granting the request simply enabled the jury to take greater care in evaluating the evidence.

*Ross*, 451 N.W.2d at 237. No abuse of discretion was found in *Ross* despite the fact that all reviewed evidence was state's evidence. Here the jury was permitted to review only a fraction of the quantity of state's evidence reviewed in *Ross*. I find no abuse of discretion in this case.

## III.

Finally, I believe the evidence was sufficient to sustain a jury finding of guilt. While another jury presented with the evidence in this case might have judged credibility of the witnesses differently and returned a verdict of not guilty, we in this court cannot function as that other jury. We must view the evidence in the light most favorable to the state.

Here there was testimony by several witnesses that M.K. related incidents of sexual abuse to them. Further, the most important witness to take the stand, I submit, was M.K. herself, who stated that she was abused and that appellant was the abuser. *See* Minn.Stat. § 609.347, subd. 1 (1988) ("In a prosecution [for criminal sexual conduct] the testimony of the victim need not be corroborated"). In many sexual child abuse cases the alleged victim is not competent to testify in court and all evidence is of necessity presented by others. Such was not the case here. The jury saw and heard M.K. and judged her credibility as well as the credibility of all other witnesses. Based on that evidence, the jury found

---

**1.** Even assuming as does the majority that the videotape interview is testimonial in nature, a prior, out-of-court statement by M.K. would be admissible under various provisions including Minn.Stat. § 595.02, subd. 3 (1988). That statute admits

an out-of-court statement made by a child under the age of ten years * * * alleging, explaining * * * or describing any act of sexual contact * * * performed with or on the child * * *.

the appellant guilty of criminal sexual conduct in the second degree. We must respect that determination.