**STATE of Minnesota, Appellant,**

v.

**David Scott SIME, Respondent.**

No. A03–279.

Court of Appeals of Minnesota.

Oct. 21, 2003.

Mike Hatch, Attorney General, St. Paul, MN; and Robin W. Finke, Swift County Attorney, Benson, MN, for appellant.

Gregory R. Anderson, Timothy J. Simonson, Anderson Larson Hanson & Saunders, P.L.L.P., Willmar, MN, for respondent.

Considered and decided by HARTEN, Presiding Judge, ANDERSON, Judge, and WRIGHT, Judge.

## OPINION

WRIGHT, Judge.

Appellant State of Minnesota challenges the district court's order dismissing a complaint alleging two counts of criminal sexual conduct in the second degree for lack of probable cause. Because we conclude that the district court (1) abused its discretion when, after granting a continuance of the probable-cause hearing to permit the state to present testimony from out-of-state witnesses on the issue of probable cause, it dismissed the case without holding the hearing and (2) erred when it determined that the child complainant was not competent to testify based on a general assessment of children her age, rather than an individualized assessment of the complainant's capacity to tell the truth and ability to recall the events about which she will be questioned, we reverse and remand.

## FACTS

In 2002, Karen Phelps and her then four-year-old daughter (H.P.) were returning to Michigan after attending a graduation party in Benson, Minnesota for the son of respondent David Sime. During the trip, H.P. asked her mother if she wanted to touch H.P.'s genitals.[1] Phelps, who was startled by this question, directed the conversation away from this topic. During her bath the following day, H.P. stated that her nancy was dirty and need-

ed to be washed. H.P. then disclosed that Sime had touched her genital area under her underwear, and he had made her touch his penis.

When Phelps contacted the Benson Police Department, she was encouraged to have H.P. evaluated by a psychologist. On June 7, 2002, H.P. was interviewed by a social worker in Michigan. During the interview, H.P. disclosed that Sime had put his hands in her underpants and touched her vaginal area on more than one occasion. H.P. described this contact as painful and stated that it made her want to cry. H.P. also indicated that Sime had put his hand over her mouth and ordered her not to tell anyone about the sexual contact. H.P. also described Sime rubbing his penis against her buttocks while she was wearing underwear and forcing her to touch his penis, which she described in both its erect and flaccid state.

H.P. was confused about some of the circumstances surrounding the sexual conduct. For example, she was unclear about whether, in addition to the assaults in the house, Sime assaulted her in a "clubhouse" on Sime's property. H.P. also was unclear about whether one of her cousins was present during the sexual abuse.

The June 7 interview was not videotaped. During a subsequent attempt to interview H.P. on video, she refused to cooperate. Similarly, when a physician conducted a physical examination of H.P., H.P. initially declined to acknowledge any sexual abuse. The physical examination revealed no signs of sexual abuse.

Sime was charged with two counts of second-degree criminal sexual conduct, in violation of Minn. Stat § 609.343, subds.

---

1. H.P. used the term "nancy", which her mother understood to mean H.P.'s vaginal area.

1(a), 2, and subd. 1(g) (2000). The state sought to have H.P.'s out-of-court statements admitted into evidence pursuant to Minn.Stat. § 595.02, subd. 3 (2002), arguing that H.P. may not be competent to testify and that her statements to her mother and the social worker are admissible. The state also moved the district court to allow H.P. to testify outside of Sime's presence. Sime opposed the state's motions, sought permission to have his own psychological expert examine H.P., and moved to have the case dismissed for lack of probable cause. The district court held an omnibus hearing in February 2002, during which it granted a continuance to permit the state to produce witnesses to testify regarding the probable-cause issue. Shortly thereafter, Sime's counsel sent the district court a letter reiterating its argument that probable cause did not exist. The state objected to this unsolicited contact with the district court while the hearing was pending.

Without resuming the hearing, the district court dismissed the complaint for lack of probable cause. The district court found that H.P. was incompetent to testify because of her age at the time of the alleged incident, the amount of time that would elapse between the incident and the trial, and the district court's doubt as to the ability of any child of H.P.'s age to appreciate the obligations to testify truthfully and to accurately relate the details of the alleged abuse. The district court also ruled that H.P.'s out-of-court statements were inadmissible because they lacked reliability. Without H.P.'s statements in evidence, the district court determined that there was not probable cause to believe that Sime committed the charged offenses. This appeal followed.

## ISSUES

I.  After granting a continuance to permit the production of testimony on the contested issue of probable cause, did the district court err in dismissing the case prior to resuming the hearing?

II.  Did the district court abuse its discretion when it determined, without examination, that a four-year-old complainant was incompetent to testify?

III.  Did the district court err in concluding that the out-of-court statements of a four-year-old alleged victim of multiple sexual assaults were unreliable and, therefore, inadmissible?

IV.  Did the district court err by accepting an unsolicited letter from counsel for Sime while awaiting the resumption of the omnibus hearing?

## ANALYSIS

The state may appeal as of right to this court "from any pretrial order of the trial court, including probable cause dismissal orders based on questions of law." Minn. R.Crim. P. 28.04, subd. 1(1). To prevail, the state must clearly show that the district court "erred in its judgment and ... the error will have a critical impact on the outcome of the trial." *State v. Hanson*, 583 N.W.2d 4, 5 (Minn.App.1998), *review denied* (Minn. Oct. 29, 1998). Critical impact exists where the district court dismisses a complaint for lack of probable cause. *Id.* at 5–6.

I.

The state contends that the district court erred by continuing the omnibus hearing to permit the state to produce witnesses on the contested issue of probable cause and then dismissing the case before the resumption of the hearing. In its order, the district court offered no explanation for this action, which effectively served as a denial of the state's motion for continuance.

District courts have broad discretion on matters of continuances. *State v. Vance,* 254 N.W.2d 353, 358 (Minn.1977). Such discretion must be exercised based on the facts and circumstances surrounding the request. *Id.* An unreasoned or arbitrary denial in the presence of a justifiable request for delay constitutes an abuse of discretion. *Morris v. Slappy,* 461 U.S. 1, 11–12, 103 S.Ct. 1610, 1616, 75 L.Ed.2d 610 (1983). For example, in *State v. Stroud,* we ruled that the district court abused its discretion by denying the state's continuance request in order to obtain DNA test results where the state had acted diligently in submitting the sample to the FBI lab and the delay was beyond the state's control. 459 N.W.2d 332, 335 (Minn.App. 1990). Because the state had acted in good faith and the denial of the continuance made it impossible for the state to prove its case, we concluded that the district court had abused its discretion. *Id.*

Here, the district court granted the state's request for a continuance of the omnibus hearing to produce the testimony of witnesses who reside in Michigan. In the absence of evidence in the record or an explicit finding that the state's request was in bad faith or the result of a failure to act diligently, we can infer that the district court's continuance was proper based on the facts and circumstances surrounding the state's request. Under these circumstances, the district court's sua sponte withdrawal of the continuance and closure of the hearing, without providing notice or any rationale for its action, constitutes an arbitrary action that prejudiced the state by preventing it from presenting additional evidence to support the charges. The district court's dismissal of the charges prior to resuming the continued hearing precluded a decision based on a fully developed record on the probable-cause issue. As discussed below, the decision was based on determinations of the complainant's competency and credibility that are unsupported by the record. We, therefore, reverse the district court's dismissal and remand this matter to the district court for a hearing set within a reasonable amount of time to permit the state to produce its witnesses.

## II.

■ The state next argues that the district court abused its discretion in determining that H.P. was not competent to testify. Before addressing the merits of the state's argument, we first address Sime's claim that the state is precluded from arguing that H.P. is competent. Sime contends that the state waived the issue of H.P.'s competency because the state asserted she was incompetent in both its oral and written arguments. A full and fair reading of the record, however, leads to a different conclusion. Although the state argued that H.P. *may* be incompetent when it moved the district court to admit her out-of-court statements pursuant to Minn.Stat. § 595.02, subd. 3 (2002), the record establishes that the state was arguing *in the alternative* to its position that H.P. was a competent witness. Thus, the issue of H.P.'s competency has not been waived.

■ "The determination of a witness' competency is one peculiarly for the trial court to consider." *State v. Lau,* 409 N.W.2d 275, 277 (Minn.App.1987). As such, it rests within the sound discretion of the district court. *State v. Berry,* 309 N.W.2d 777, 782 (Minn.1981).

Prior to 1987, children under the age of ten were presumed incompetent to testify unless their competency was otherwise demonstrated. *State v. Scott,* 501 N.W.2d 608, 613 (Minn.1993). The legislature subsequently amended Minn.Stat. § 595.02, subd. 1(m) (2002), and created the pre-

sumption that children are competent to testify unless the district court specifically finds the contrary to be true. *See* Minn. Stat. § 595.02, subd. 1(m); *Scott,* 501 N.W.2d at 613. "Where the court is in doubt as to the child's competency, it is best to err on the side of determining the child to be competent." *State v. Lanam,* 459 N.W.2d 656, 660 (Minn.1990).

The district court did not conduct a competency hearing with H.P. present prior to determining H.P.'s competency. Rather, the district court concluded that H.P. was not competent for the following reasons: (1) H.P. was four years old at the time of the alleged incident and a trial would occur over a year later; (2) it is "doubtful that a child at such a young age can understand the obligations of an oath, remember the events with any clarity and articulate those events[;]" (3) H.P. is "camera shy and shuts down when videotaped[;]" and (4) physical accommodations could not be made to permit H.P. to testify in a "secure atmosphere" outside the presence of Sime, while still allowing him to hear H.P.'s testimony.

Minn.Stat. § 595.02 requires the district court to engage in a two-part analysis when determining competency. *State v. Struss,* 404 N.W.2d 811, 814 (Minn.App. 1987), *review denied* (Minn. June 9, 1987). The district court must first conclude that the child has (1) the capacity to tell the truth and (2) the ability to recall facts. *Id.* A competency determination is not the same as a credibility determination. *Lanam,* 459 N.W.2d at 660 (stating that "[t]he jury will judge the child's credibility and decide the weight to assign the testimony").

Typically, the determination of competency is made by conducting a preliminary examination of the proposed witness to ascertain whether the witness understands the obligation of the oath and is capable of narrating the events about which the witness will testify. *Berry,* 309 N.W.2d at 782. The witness's ability to remember and relate events truthfully, however, should not be tested by questioning the witness about the details of the possible testimony. *Scott,* 501 N.W.2d at 613, 615.

> [Q]uestions at a competency hearing usually are limited to matters that are unrelated to the basic issues of the trial. Children often are asked their names, where they go to school, how old they are, whether they know who the judge is, whether they know what a lie is, and whether they know what happens when one tells a lie.

*Id.* at 615 (quoting *Kentucky v. Stincer,* 482 U.S. 730, 741–42, 107 S.Ct. 2658, 2665–66, 96 L.Ed.2d 631 (1987)).

Here, the district court abused its discretion by determining H.P. to be incompetent without ascertaining whether she understood the obligations of the oath and was capable of remembering and relating events about which she would testify. Although the parties have not cited, and we have not found, any legal authority that explicitly requires the district court to examine the proposed witness personally, this is the customary procedure. *Berry,* 309 N.W.2d at 782. On the record before us, we need not decide the broader question of whether a personal examination of the prospective witness is required in every case.

Much of the district court's analysis of H.P.'s competency focused on the logistical challenge of accommodating the state's request to present H.P.'s testimony outside the presence of Sime. Whether and how to accommodate this request, however, are issues distinct from H.P.'s ability to understand the obligation to testify truthfully and to restate the events about which she would testify. As to these critical determinations, the district court generalized that

it was "doubtful" any child of H.P.'s age could testify competently. The conclusion, reached by the district court without holding a competency hearing at which it could perform the requisite inquiry, is contrary to both precedent and the record in its current state. *See State v. Brovold,* 477 N.W.2d 775, 778–79 (Minn.App.1991) (holding that a three-year-old child was competent to testify), *review denied* (Minn. Jan. 19, 1992); *State v. Ross,* 451 N.W.2d 231, 236 (Minn.App.1990) (holding that, notwithstanding troubling answers given during the competency examination, a four-year-old child was competent to testify because she gave correct responses to simple questions), *review denied* (Minn. Apr. 13, 1990); *Lau,* 409 N.W.2d at 278 (holding that a five-year-old child was competent to testify). The evidence in the record suggests that indeed H.P. could meet the competency requirements set out in *Lanam, Scott,* and *Brovold.* The social worker who examined H.P. reported that H.P. was able to "tell truth from lie." Although during the physical examination H.P. did not readily acknowledge that sexual abuse had occurred, this fact relates to her credibility, not to her competency. *See Lanam,* 459 N.W.2d at 660 (distinguishing a competency determination from a credibility determination).

We are mindful that, given H.P.'s hesitance to talk while being videotaped, she may not be competent to testify at trial. *See State v. Oslund,* 469 N.W.2d 489, 493 (Minn.App.1991) (child who was unresponsive to even very simple questions was not competent to testify), *review denied* (Minn. July 24, 1991). But this conclusion cannot be reached without performing the requisite inquiry to determine H.P.'s competency. *Scott,* 501 N.W.2d at 615. We, therefore, reverse the district court's determination of H.P.'s incompetency and remand with instructions to conduct a hearing and make specific findings as to H.P.'s

ability to (1) understand the obligation of the oath to testify truthfully and (2) recall and relate the events about which she will be called to testify.

### III.

The state next argues that the district court erred in ruling that H.P.'s disclosure of sexual abuse to her mother and a social worker are unreliable and, therefore, inadmissible under Minn.Stat. § 595.02, subd. 3. Evidentiary rulings are within the sound discretion of the district court, and we will not disturb them in the absence of a clear abuse of discretion. *State v. Cole,* 594 N.W.2d 197, 198 (Minn. App.1999). The out-of-court statements of a child under the age of ten regarding sexual abuse are admissible if

> (a) the court ... finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement and the reliability of the person to whom the statement is made provide sufficient indicia of reliability; and (b) the child ... either: (i) testifies at the proceedings; or (ii) is unavailable as a witness and there is corroborative evidence of the act[.]

Minn.Stat. § 595.02, subd. 3. The proponent of the statement bears the burden of proving reliability. *Scott,* 501 N.W.2d at 618.

The totality of the circumstances surrounding the making of the statement must be considered when determining whether a child's out-of-court statements are reliable. *Oslund,* 469 N.W.2d at 493. Relevant circumstances to consider in determining whether a statement has "particularized guarantees of trustworthiness" are "(1) spontaneity and consistent repetition; (2) use of terminology unexpected of a child of similar age; (3) statements elicited without leading questions; and (4) lack

of motive to fabricate." *Id.* at 493–94 (citing *Idaho v. Wright,* 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990)). Other factors, such as the declarant's knowledge, "the proximity in time between the statement and the events described," and whether the person to whom the child made the statement had a preconceived idea of what the child would say, also may be considered. *State v. Conklin,* 444 N.W.2d 268, 276 (Minn.1989); *Lanam,* 459 N.W.2d at 661.

Consideration of the totality of circumstances for each proffered statement is critical to the district court's analysis of the statements' admissibility. *Oslund,* 469 N.W.2d at 493. The record contains documentary evidence of H.P.'s statements. But it does not fully establish the circumstances under which the statements were made. Upon review, we conclude that the district court's ruling on the admissibility of the statements was premature without the testimony of the witnesses as to the context and circumstances of H.P.'s statements. This testimony will enable the district court to consider such factors as the manner in which H.P. was questioned, whether leading questions were utilized to elicit H.P.'s statements, whether there was consistent repetition of the events, H.P.'s manner and emotional state when making the statements, and the degree of certainty with which each statement was made.

We note further that the need for corroborating evidence to render the statements admissible under Minn.Stat. § 595.02, subd. 3(b), depends on whether H.P. testifies at trial, which is contingent on the district court's determination of H.P.'s competency on remand. Accordingly, because the record was not developed sufficiently to permit proper review of the admissibility of H.P.'s out-of-court statements, we reverse and remand for consideration of the relevant factors after a hearing on this matter.

## IV.

It is the district court's duty to ensure integrity at all stages of a criminal prosecution. *Pederson v. State,* 649 N.W.2d 161, 164 (Minn.2002). To ensure public confidence in the criminal justice system, the district court must avoid even the appearance of impropriety. *Id.* at 164–65. But when evaluating arguments as to the impartiality of the judge, we consider whether the district court's conduct prejudiced the outcome. *McKenzie v. State,* 583 N.W.2d 744, 747 (Minn.1998).

The state contends that the district court improperly accepted an unsolicited letter from Sime's counsel and subsequently reversed its decision to continue the omnibus hearing and dismissed the case. The state argues that the mere receipt of Sime's letter casts doubt on the neutrality of the district court and warrants a reversal. As an initial matter, we note that the letter, while unsolicited, was not an ex parte contact. Nothing precluded the state from responding to the issues raised in the letter. Moreover, our rulings here, which we have reached without consideration of the state's claim of partiality, render this argument moot.

It is, nevertheless, noteworthy that the state offers no proof of actual prejudice. Thus, the record is devoid of any basis for concluding that the district court erred when it received Sime's unsolicited letter.

## DECISION

After granting a continuance to permit the production of testimony on the contested issue of probable cause, the district court erred when it dismissed the complaint prior to resuming the hearing. The district court abused its discretion when it determined that H.P. was incompetent to

testify without an examination of the four-year-old child's ability to understand the obligation of the oath and to relate the events about which she would be called to testify. Based on the current state of the record, the district court's ruling on the admissibility of H.P.'s out-of-court statements was premature without the testimony of the witnesses as to the context and circumstances in which H.P.'s statements were made.

**Reversed and remanded.**