Babatunde Sunday ADESIJI,
Petitioner, Appellant,

v.

STATE of Minnesota, Respondent.

No. C8-85-1075.

Court of Appeals of Minnesota.

April 8, 1986.

Review Denied June 13, 1986.

Fred A. Reiter, Minneapolis, for petitioner, appellant.

Hubert H. Humphrey, III, Atty. Gen., Thomas L. Johnson, Hennepin Co. Atty., Vernon E. Bergstrom, Chief, Appellate Section, Michael Richardson, Asst. Co. Atty., Minneapolis, for respondent.

Heard, considered and decided by FORSBERG, P.J., and LANSING and RANDALL, JJ.

## OPINION

LANSING, Judge.

Appellant Babatunde Sunday Adesiji was convicted of two counts of first-degree intrafamilial sexual abuse in violation of Minn.Stat. § 609.3641, subd. 1(1), and *id.*, subd. 1(2)(e) (1984). On appeal he claims the trial court erred in its instructions on sexual contact and in making several evidentiary rulings. He also claims the evidence is insufficient to sustain his convictions and that he was denied effective assistance of counsel. We affirm in part, reverse in part, and remand for a new trial on count 2.

## FACTS

The State alleged that appellant sexually abused his 12-year-old stepdaughter, Y.C., by engaging in sexual contact and sexual intercourse with her between August 29 and December 31, 1983. Y.C. testified about these incidents and others that occurred up to five years before the dates alleged in the complaint. Y.C.'s mother, Janice Adesiji, testified that Y.C. had told her of four incidents of abuse or misconduct during the period alleged in the complaint. Janice Adesiji believed Y.C. was fabricating the incidents. The medical evidence at trial was not conclusive. A psychologist testified, however, that Y.C.'s psychosomatic abdominal pain, reported over a period of years, was consistent with sexual abuse. The psychologist also testified that "it is believed that it is extremely rare for children to make up or make a false accusation."

The jury convicted appellant of both counts of intrafamilial sexual abuse charged in the complaint. The trial court sentenced him on count 1 to 43 months in prison; the court imposed no sentence on count 2 on the basis that the convictions arose from a single behavioral incident. This appeal follows the trial court's denial of appellant's petition for post-conviction relief.

## ISSUES

1. Should appellant's conviction of violating Minn.Stat. § 609.3641, subd. 1(2)(e), be reversed because of a prejudicial jury instruction?

2. Is the evidence sufficient to sustain appellant's conviction of violating Minn. Stat. § 609.3641, subd. 1(1)?

3. Did the trial court abuse its discretion in permitting an expert to testify that children rarely lie about sexual abuse?

4. Did the trial court abuse its discretion in admitting *Spriegl* evidence about sexual contact that occurred before the dates alleged in the complaint?

5. Did the prosecutor commit prejudicial misconduct by injecting the issue of whether appellant had physically abused his wife seven years earlier?

6. Is appellant entitled to a new trial because he was denied effective assistance of counsel?

## ANALYSIS

### I

■ On count 2, alleging violation of Minn.Stat. § 609.3641, subd. 1(2)(e), the trial court instructed the jury as follows:

Defendant must have intentionally committed acts of sexual abuse involving multiple acts over an extended period of time. Abuse means penetration, and it also means sexual contact if the acts can *reasonably* be construed to be for the purpose of satisfying the actor's sexual or aggressive impulses.

(Emphasis added). The supreme court has held that giving this instruction is error because it obscures and dilutes the requirement of proof beyond a reasonable doubt. *See State v. Tibbetts,* 281 N.W.2d 499, 500 (Minn.1979); *Moll v. State,* 351 N.W.2d 639, 642 (Minn.Ct.App.1984). At oral argument the State conceded that appellant is entitled to have this conviction reversed because the instruction was prejudicially erroneous.

We are not persuaded, however, that the error on this charge influenced the jury to convict on count 1. The trial court instructed the jury on count 1 as follows:

The elements as to Count 1: Sexual Abuse in the First Degree, in this case are:

First. That the defendant must have intentionally sexually penetrated [Y.C.]. It is immaterial whether [Y.C.] consented. Sexual intercourse constitutes sexual penetration if there is any intrusion of the penis into the female opening, however slight. * * *

Second. Defendant must have had a familial relationship to [Y.C.] as a stepparent.

Third. [Y.C.] must have been 16 years of age or less.

Fourth. Defendant's act must have taken place on or about August 29th to December 31, 1983, in Hennepin County.

If you find that each of these four elements has been proved beyond a reasonable doubt, defendant is guilty of Intrafamilial Sexual Abuse in the First Degree.

If you find that any of these elements has not been so proved, defendant is not guilty.

The court clearly differentiated the instructions on the two counts. The instruction on count 1 properly requires proof beyond a reasonable doubt of sexual penetration.

## II

Appellant contends the evidence is insufficient to sustain his conviction of violating § 609.3641, subd. 1(1), for sexually penetrating Y.C.

Y.C. gave detailed testimony about one incident of penetration that occurred, within the time frame alleged in the complaint, in the basement of their home, where appellant's office was located. In addition, her 13-year-old cousin testified that Y.C. told her about appellant's conduct after they discussed a television movie in which a young girl's father sexually abused her. The cousin testified that Y.C. gave her a note describing the movie and saying the same thing had happened to Y.C. The note was admitted at trial. Y.C.'s cousin gave the note to her mother, who in turn gave it to Y.C.'s grandmother, who contacted the authorities.

A physician who performed a sexual assault exam testified that there was no conclusive medical evidence of sexual abuse.

Janice Adesiji testified that between August and December 1983 Y.C. told her about one incident of sexual penetration, one incident of sexual contact, and two incidents in which Y.C. thought appellant was watching her in the bathroom through a ceiling vent. Regarding the report of sexual penetration, Janice Adesiji said Y.C. brought the incident up while they were waiting in the car for appellant to come out of a store. She said Y.C. asked what would happen if the uncle of a friend was "messing" with her friend. Y.C. wanted to know whether the friend would be removed from her home. When pressed, Y.C. said she was talking about herself, not a friend. Regarding the report of sexual contact, Janice Adesiji said Y.C. called her at work, crying, and said appellant had been sucking her breast. Janice Adesiji said she discussed each report with appellant and was satisfied that Y.C. was fabricating the incidents. She said she believed Y.C. was lying because she disliked her stepfather and

did not want to move to his home in Nigeria, which the family intended to do at some future time. In addition, she said her mother, Madeline Mayfield, was fond of Y.C. and must have encouraged Y.C. to lie so the child could remain here.

Kathleen Anstett, a child protection worker, said appellant was very interested in the results of the sexual assault exam and told her, "if the tests showed that [Y.C.] had known a man, that I could hold him responsible," but that "if the medical tests were not positive, that he hadn't done anything." Anstett also testified that Janice Adesiji told her appellant had "accidentally" bitten Y.C.'s breast. Shirleen Knapp, a Minneapolis police officer, said Janice Adesiji told her appellant had sucked on Y.C.'s breast but that he was just playing around and didn't mean for Y.C. to take it seriously. At trial Janice Adesiji denied making these statements.

Appellant testified that he had never abused Y.C. He also said that Y.C. fabricated the incidents at the prompting of her grandmother, Mrs. Mayfield, who appellant perceived as constantly interfering with his marriage. He called a staff physician at Hennepin County Medical Center, Dr. Larry Dailey, who evaluated Y.C. in 1981 for recurrent abdominal pain. At that time, Y.C. denied any physical or sexual abuse. Dr. Dailey concluded the pain was psychosomatic and referred the family for counseling. He also said Y.C. was a well-behaved, depressed child and that children who have psychosomatic pain are generally compliant in nature.

■ The scope of review on appeal is limited to determining whether the jury could conclude beyond a reasonable doubt from the evidence in the record that appellant was guilty of the offense charged. *See State v. Dodis*, 314 N.W.2d 233, 237 (Minn.1982). In view of Y.C.'s testimony, her mother's inconsistent statements, appellant's damaging statements to Kathleen Anstett, and the corroboration supplied by Y.C.'s cousin and grandmother, we are compelled to find the evidence sufficient to sustain appellant's conviction.

## III

After Dr. Dailey testified that Y.C. denied being physically or sexually abused in 1981, the State called in rebuttal Dr. Susan Phipps-Yonas, a child psychologist and expert in the area of child sexual abuse. Dr. Phipps-Yonas testified that psychosomatic illnesses are frequently associated with sexual abuse and that the physical symptoms reported by the victims are associated with the circumstances under which they have been abused. Y.C. had reported abdominal pain in the evening when she was in bed.

Dr. Phipps-Yonas also testified that children are confused and ashamed by sexual abuse and often delay reporting it. When the prosecutor asked her whether children "make this sort of thing up," defense counsel objected on grounds of foundation. After testifying further about the "general acceptance within the medical community about how children report sexual abuse," Dr. Phipps-Yonas said, "[G]enerally it is believed that it is extremely rare for children to make up or make a false accusation." Defense counsel reiterated his objection on the basis of insufficient foundation. Dr. Phipps-Yonas had never interviewed Y.C.

In *State v. Myers*, 359 N.W.2d 604 (Minn. 1984), the supreme court held that expert testimony about the emotional and psychological characteristics of children who have been sexually abused is admissible, *see id.* at 610–11, but that expert testimony about the complainant's truthfulness is generally inadmissible because "the expert's status may lend an unwarranted 'stamp of scientific legitimacy' to the allegations," *id.* at 611 (quoting *People v. Izzo*, 90 Mich.App. 727, 730, 282 N.W.2d 10, 11 (1979)). Nonetheless, the court said that by stressing the mother's initial disbelief of the child's allegation and by portraying the mother as the ultimate expert on the child's credibility, the defendant had waived his objection to responsive opinion testimony elicited by "an expert of a different kind." *Id.* at 612. *See also State v. Miller*, 377 N.W.2d 506 (Minn.Ct.App.1985) (reversing a conviction

for second-degree criminal sexual conduct because a psychologist was permitted to testify that he believed the complainant).

 If expert testimony on the truthfulness of a particular child is improper, then expert testimony on the truthfulness of children in general is even more improper. Nonetheless, we conclude that appellant waived his objection to this testimony, as in *Myers*, because he focused on Janice Adesiji's disbelief of Y.C.'s complaints and portrayed her as the "ultimate expert" on Y.C.'s credibility.

## IV

The original complaint described the incident of sexual penetration that occurred in the basement and the acts of sexual contact described *supra*. Six days before trial, the State gave appellant *Spreigl* notice that it intended to introduce evidence of "multiple acts of sexual penetration or * * sexual contact" with Y.C. that occurred between August 29, 1978, and August 29, 1983, a period of five years prior to the dates alleged in the complaint.

At the omnibus hearing the prosecutor said the conduct alleged to have occurred in that five-year period had been written down in memo form and given to defense counsel. Defense counsel objected to the vagueness of the *Spreigl* notice but said nothing about the memo provided by the prosecution or when he had received it. This memo is not in the record, nor is the trial court's ruling on the issue. The evidence was permitted at trial without objection by defense counsel, however, and it is apparent that the defense was prepared to and did respond to it.

 Appellant contends on appeal that he received insufficient *Spreigl* notice and that the State failed to prove that he committed those acts by clear and convincing evidence. We conclude that appellant failed to preserve these issues for appeal because the record is inadequate to permit meaningful review. *Cf. State v. Forsman*, 260 N.W.2d 160, 169 (Minn.1977).

## V

Y.C.'s grandmother, Madeline Mayfield, testified about receiving the note Y.C. wrote to her cousin and contacting the authorities. On cross-examination, defense counsel brought up the long-standing friction between Mayfield and Janice Adesiji, suggesting the friction was due to Mayfield's interference in the Adesijis' marriage and Mayfield's dislike of appellant. On redirect, the prosecutor said, "Mrs. Mayfield, you've also disliked the defendant, because he's beaten your daughter. Isn't that true?" Up to this point there had been no allegation that appellant was physically abusive.

 The State argues that appellant waived this issue by failing to object to the question at trial. We disagree. The question was phrased so that timely objection was impossible. Appellant had no choice but to elicit further testimony explaining that, seven years earlier, he and Janice Adesiji had had a physical argument. Janice Adesiji testified that it was an isolated incident, and other witnesses, including the complainant, testified that appellant was not physically abusive. In the alternative, the State argues appellant "opened the door" to this testimony by bringing out Mayfield's dislike of him. Again we disagree. There were a number of reasons for Mrs. Mayfield's dislike of appellant, none of which were as prejudicial. Although this question was highly improper and injected the issue of physical abuse into the trial, we do not think it was so prejudicial as to require reversal. *See State v. Caron*, 300 Minn. 123, 127–28, 218 N.W.2d 197, 200 (1974).

## VI

Appellant claims he is entitled to a new trial because he was denied effective assistance of counsel. It is not necessary to further discuss each of the claimed professional errors. We are not persuaded there is a reasonable probability that, but for any errors at trial, the result of the proceedings would have been different. *See Strick-*

*land v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984).

### DECISION

Appellant's conviction of violating Minn. Stat. § 609.3641, subd. 1(2)(e), is reversed.

Appellant's conviction of violating Minn. Stat. § 609.3641, subd. 1(1), is affirmed.

Affirmed in part, reversed in part, and remanded for a new trial on the count reversed by this opinion.

RANDALL, Judge, dissenting.

I respectfully dissent. The majority opinion in its analysis on the first issue correctly points out that the instructions given the jury on count II were erroneous as a matter of law. The State concedes that appellant is entitled to have his conviction vacated on that count. Yet the majority opinion examines the disputed instruction and concedes: "We are not persuaded, however, that the error on this charge influenced the jury to convict on count I." I disagree.

I find the two counts so intertwined that if, as the State concedes, appellant did not receive a fair trial on count II, the prejudicial error as to count I, as a matter of law, cannot be overlooked.

Both counts I and II involve the same victim, appellant's 12-year old stepdaughter, Y.C. Count I charged sexual penetration between approximately August 29 and December 21, 1983. Count II charged intentional acts of sexual abuse involving multiple acts over an extended period of time.

The majority vacates the count II conviction due to prejudicial error. The offending instruction on count II was the trial court's statement that "abuse means penetration, and it also means sexual contact if the acts can *reasonably be construed* for the purpose of satisfying the actor's sexual or aggressive impulses." (emphasis added).

With the jury being told that count one involves sexual penetration and that count two involves intentional sexual abuse, *and that abuse means penetration,* the jury

easily could have used the offending parts of the count II instruction in determining whether or not appellant was guilty of count I, which required penetration.

Juries are free to discuss multiple counts in any order they choose. Quite commonly they may decide the counts on which there is unanimity, or near unanimity, of opinion before going on to the counts in which there is an initial division of opinion. They are neither instructed by the court nor bound to decide counts in chronological order. Thus, they may have arrived at their finding of guilty by proof beyond a reasonable doubt on count II before discussing count I.

It would be contrary to reason and logic to assume that a jury that already has found defendant guilty by proof beyond a reasonable doubt of sexual abuse of a victim (count II) will not keep that conviction in mind as they assess the credibility of the State's evidence on count I and the credibility of the defendant's denial. This presumption of overlap is even stronger because count I was a virtually identical charge against the same victim.

There is no way for this court to assume that the jury reviewed the evidence and the laws as to count I independently of count II, and no way to assume that their conviction of appellant on count II, which today we are vacating because of prejudicial error, did not firm up the resolve of any jurors who may have had lingering doubts as to count I.

In *Moll v. State*, 351 N.W.2d 639 (Minn. Ct.App.1984) we held that the offending instruction (given in count II) was plain error calling for a reversal of a conviction despite defendant's failure to object.

With the trial court advising the jury that count I called for penetration; instructing the jury, on count II, that sexual abuse means penetration; and defining sexual contact, in count II, with the improper instruction: " * * * reasonably be construed * * *," I cannot find a way around the inference of impermissible overlap between counts I and II.

I would reverse and remand for a new trial on both counts I and II.