**STATE of Minnesota, Respondent,**

v.

**Richard L. STRUSS, Appellant.**

**No. C0–86–1260.**

Court of Appeals of Minnesota.

April 21, 1987.

Review Denied June 9, 1987.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas Johnson, Hennepin Co. Atty., Vernon E. Bergstrom, Chief, Appellate Section, Anne E. Peek, Asst. Co. Atty., Minneapolis, for respondent.

C. Paul Jones, State Public Defender, Bradford W. Colbert, Asst. State Public Defender, Minneapolis, for appellant.

Considered and decided by LESLIE, P.J., and SEDGWICK and HUSPENI, JJ., with oral argument waived.

## OPINION

HUSPENI, Judge.

Richard Lyle Struss appeals a conviction of criminal sexual conduct in the first degree, in violation of Minn.Stat. § 609.342, subd. 1(a) (1984). He argues: he was denied his right to appeal because the transcript of the omnibus hearing was lost; the trial court abused its discretion in finding the five-year-old complainant competent to testify; the trial court erred in admitting hearsay statements by the complainant and the evidence is insufficient to support the verdict. We affirm.

## FACTS

Appellant often babysat for the three children of his friend B.K. while she worked. One of the children, six-year-old D.K., has a pituitary problem which causes binge eating. He also has behavioral problems which his mother has difficulty controlling.

In May of 1985, while D.K. was living with his mother, she asked appellant to let the child stay at his apartment overnight. According to D.K., he went to sleep that evening in a sleeping bag on the floor of appellant's bedroom. He was fully clothed when he went to bed. Later, appellant came into the room and told him to take his clothes off. He put his penis in D.K.'s mouth and made D.K. put his penis in appellant's mouth.

Appellant denies the allegation. He states that he put D.K. to bed on the floor in his bedroom and returned to the living room of the apartment to watch an X-rated movie with his roommate, Michael Lorenz. When they heard D.K. giggling, they realized that he was in the doorway of the bedroom watching the movie. Appellant told D.K. to go to sleep and closed the bedroom door. At about 10 p.m., appellant went to bed in the bedroom, leaving the door open. Lorenz continued watching movies until about 1 a.m. During that time he heard no sounds coming from the bedroom and did not see any activity in the room. The sleeping bag where D.K. was sleeping was visible from the living room, but Lorenz could not see the bed. Lorenz testified that nothing appeared abnormal between appellant and D.K. the following morning.

The next weekend, B.K. again brought D.K. to appellant's apartment, although D.K. protested and cried. That evening B.K. learned that appellant had taken D.K. to a bar, and she brought D.K. home without allowing him to spend the night at the apartment.

B.K. continued having trouble handling D.K. and felt that his behavior deteriorated. Finally, she brought him to Kathleen Taylor who had served as B.K.'s foster mother and had periodically taken care of D.K. After finding bruises on the child, Taylor took him to a doctor to have the bruises photographed. The doctor did not examine the child for signs of sexual abuse.

In June a social worker whose name Taylor cannot recall asked Taylor if she thought D.K. had been sexually abused. As a result of the inquiry, Taylor asked the child on June 26 if appellant had touched his private parts. D.K. described the events he contends took place the night he stayed at appellant's apartment. Taylor then notified the police and B.K., who spoke with D.K. over the phone, and assured him that she would not be angry if he told her about the incident with appellant. D.K. then repeated his statement to his mother.

On August 29, Sgt. James Martin of the Minneapolis Police Department video taped an interview with D.K. using anatomically correct dolls to demonstrate what may have happened at appellant's apartment. D.K. also said that his mother had done the same things to him that appellant had done and that B.K. had forced him to suck on her breasts. B.K. denied the allegations and at trial indicated that the child may have been referring to having been breast fed when he was younger. No charges were brought against the mother.

D.K. began seeing a therapist in June of 1985. He didn't mention the sexual abuse allegations until January of 1986, after viewing the video tape that Sgt. Martin had made. The following week, again using dolls, D.K. demonstrated to the therapist what had happened.

Appellant was charged with criminal sexual conduct in the first degree. At the omnibus hearing, the trial court determined that D.K. was competent to testify. However, the court reporter has lost the notes of the hearing and a transcript is unavailable. Appellant was found guilty and was sentenced to 41 months imprisonment.

### ISSUES

1. Does the unavailability of a transcript of the hearing where the trial court found that D.K. was competent to testify deprive appellant of his right to an appeal?

2. Did the trial court abuse its discretion in determining that D.K. was competent to testify?

3. Did the trial court err in admitting hearsay statements made by D.K.?

4. Is the evidence sufficient to support the verdict?

### ANALYSIS

#### I.

Minn.Stat. § 595.02, subd. 1(f) (1984) states that:

[C]hildren under ten years of age, if any of them lack capacity to remember or to relate truthfully facts respecting which they are examined, are not competent witnesses. A child describing any act of sexual contact or penetration performed on or with the child by another may use language appropriate for a child of that age.

A determination of a prospective child witness's competency requires a two-part evaluation. The court must conclude that the witness has both the ability to recall facts and the capacity to tell the truth. *State v. Fitzgerald*, 382 N.W.2d 892, 894 (Minn.Ct. App.), *pet. for rev. denied*, (Minn. April 24, 1986). Competency determinations are within the trial court's discretion, and the court's findings will not be upset unless there is a clear abuse of discretion. *State v. Cermak*, 350 N.W.2d 328, 332 (Minn. 1984). Typically, the trial judge conducts a preliminary examination of the prospective witness, and that examination must be on the record. *Moll v. State*, 351 N.W.2d 639, 643 (Minn.Ct.App.1984). The trial court has broad discretion as to the type of questions it asks the child during the competency examination. *Id.*

Appellant contends that D.K. was not a competent witness and because there is no transcript of the hearing wherein the competency determination was made, appellant has been deprived of appellate review of the decision to allow D.K. to testify. The parties submitted a statement of the proceedings under Minn.R.Civ.App.P. 110.03.[1] The statement contains only one sentence regarding the competency determination at the omnibus hearing, "the court found that [D.K.] was competent to testify, over Defendant's objections." This statement is insufficient as a basis for appellate review of the competency determination. The statement should include a summary of the testimony received at the hearing. *Hadrava v. Hadrava*, 357 N.W.2d 376, 379 (Minn.Ct.App.1984). The statement contains neither such a summary

---

**1.** The State has submitted an affidavit from court reporter Rose Mary Otteson stating that appellant had not inquired about the existence of a tape recording or notes from the hearing in preparing the statement. Appellant has moved to strike the affidavit from the State's brief, arguing that upon filing of the supplemental statement, the record was complete and the affidavit which was subsequently filed should not be considered part of the record before this court. The State argues that if appellant's motion is granted, this court should also strike the copy of the Otteson affidavit in appellant's reply brief and the affidavit of appellant's counsel stating that Otteson has said the tape of the hearing is completely unintelligible and that trial counsel for both parties and the trial judge have said they have very little recollection of the hearing and that their notes are of no help. Both affidavits relate to preparation of the supplemental statement and are part of the appellate record. Therefore, we deny both motions to strike the affidavits.

nor findings supporting the conclusion that D.K. was competent to testify.

■ As the supreme court has noted:

It is clear that, where all or part of a transcript which forms the basis for an appeal cannot be obtained, this court must determine whether the question on appeal can be adequately presented without the missing portion of the transcript.

*Soukup v. City of Sleepy Eye*, 281 Minn. 144, 146, 161 N.W.2d 36, 37 (1968). This court has before it the trial transcript containing both the direct and cross examination of D.K. We find that this testimony is sufficient to allow meaningful review of D.K.'s competency to testify. Therefore, the absence of a transcript of the omnibus hearing does not deprive appellant of review of the competency determination.

## II.

Appellant argues that D.K. lacked the capacity to remember, and points to instances that indicate a problem comprehending time spans and a limited ability to place events in chronological order. Such problems are not unusual for children of D.K.'s age. More importantly, these items do not relate to D.K.'s ability to recall details of a single event such as one involving sexual abuse. The testimony does not demonstrate a lack of capacity to remember specific events.

Appellant also argues that the testimony shows the child's untruthfulness. He points out that D.K. testified that his mother spanked him but never hit him. B.K. admitted having hit her son. Rather than demonstrating D.K.'s untruthfulness, the testimony merely indicates that the child described B.K.'s actions as a spanking while the mother described it as hitting. Appellant also notes that D.K. said he did not know why Kathleen Taylor took him to the doctor and that he did not have any bruises on him at that time. He was bruised. The fact that the child was mistaken as to the existence of bruises at a particular time is insufficient to indicate that he lacks the ability to testify truthfully.

■ Appellant relies most heavily on D.K.'s description during the video taped interview with Sgt. Martin of sexual abuse by his mother and B.K.'s denial that she had abused her son. Appellant infers that the denial indicates D.K. is incapable of telling the truth about incidents allegedly involving sexual abuse. We do not believe that the testimony justifies such a conclusion. The issue relates to the credibility of D.K., a matter to be determined by the jury. It does not indicate that the trial court should have determined that the child lacked the ability to testify truthfully.

■ D.K.'s testimony was consistent between the direct and cross examinations. It was also substantially consistent with previous statements, and any inconsistencies were subject to impeachment through cross examination and testimony from other witnesses. There is no indication that he was unable to recall events concerning the incident. Nor is there an indication that he was unable to testify truthfully about the incident. After reviewing the testimony, we concur with the trial court that D.K. was competent to testify, thus allowing the jury to weigh his credibility.

## III.

Appellant argues that the trial court erred in admitting into evidence hearsay statements made by D.K. to his therapist, to B.K., to Kathleen Taylor and to Sgt. Martin. Appellant does not dispute that the proper procedure for admission of the statements was followed. He contends instead that the time, content and circumstances of the statements and the reliability of the persons to whom the statements were made do not provide sufficient indicia of reliability as required by Minn.Stat. § 595.02, subd. 3(a) (Supp. 1985).

■ Where the child's testimony is largely consistent with his earlier statement and the appellant has had the opportunity to cross examine the witness, admission of hearsay statements has been upheld. *State v. Carver*, 380 N.W.2d 821, 825 (Minn.Ct.App.), *pet. for rev. denied*, (Minn. Mar. 27, 1986). Here, there was an opportunity to cross examine. However, appel-

lant points to an inconsistency between D.K.'s trial testimony and statements in the video interview with Sgt. Martin. While there is some inconsistency, the statements are substantially consistent, allowing the jury to weigh the credibility in light of this inconsistency.

Appellant also argues that D.K.'s statements were not reasonably spontaneous and were in response to leading questions. *See State v. Bellotti,* 383 N.W.2d 308, 313 (Minn.Ct.App.), *pet. for rev. denied,* (Minn. April 24, 1986). D.K. did not mention the alleged May 12 incident until June 26. The first discussion came after Kathleen Taylor expressly asked D.K. if appellant had touched his private parts. The statement to B.K., made on the same day as the statement to Taylor, came only after she assured D.K. she would not be angry if he told her about the abuse. During the August 29 interview with Sgt. Martin, the officer gave D.K. the dolls, undressed them while discussing their anatomies and then said:

Q. Okay. Do you know what I am going to talk about? Do you know what I want you to show me with the dolls?

A. Talk about [appellant].

Q. Okay. [Appellant] did some stuff to you that you didn't like, I understand?

A. Yes.

Q. Can you tell me or show me what it was that [appellant] did to you that you didn't like?

A. I will show you with the dolls.

Before discussing the incident with his therapist in January, 1986, D.K. had viewed the tape of the interview with Sgt. Martin.

Each recipient used leading questions to initially elicit the statements. However, lengthy interrogations were not used. Once the subject was brought up, D.K. had little reluctance in describing or showing what had happened. Also, D.K. did not want to stay at appellant's apartment the week after the incident with appellant, and D.K.'s behavior deteriorated after that date. Although questions were not asked at that time, we conclude that D.K.'s actions provided a reasonably spontaneous indication that something had happened to him. The circumstances provide sufficient indicia of reliability of the statements. Accordingly, the statements were properly admitted into evidence.

### IV.

When reviewing a sufficiency of the evidence claim:

We cannot retry the facts, but must take the view of the evidence most favorable to the state and must assume that the jury believed the state's witnesses and disbelieved any contradictory evidence.

*State v. Merrill,* 274 N.W.2d 99, 111 (Minn. 1978). Appellant argues that D.K.'s testimony and prior statements are inconsistent and uncorroborated, indicating they are of such dubious credibility that reversal of the verdict is required. *See State v. Langteau,* 268 N.W.2d 76, 77 (Minn.1978).

As we have observed earlier, D.K.'s statements are fundamentally consistent, and although triggered by leading questions, were not the products of extensive interrogation by leading questions. At trial he testified substantially consistent with his prior statements and did not contradict himself on cross examination. The statements are not of such dubious credibility that the verdict must be reversed.

### DECISION

The motions to strike the affidavits are denied. The trial testimony is sufficient to allow review of the trial court's determination that D.K. was competent to testify. The court did not abuse its discretion in allowing the witness to testify. Hearsay statements were properly admitted, and there is sufficient evidence to support the verdict.

Affirmed.