**STATE of Minnesota, Respondent,**

v.

**Gene Alan BROVOLD, Appellant.**

**No. C1–91–679.**

Court of Appeals of Minnesota.

Nov. 26, 1991.

Review Denied Jan. 17, 1992.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Michael O. Freeman, Hennepin County Atty. and Lee W. Barry, Sr. Asst. County Atty., Minneapolis, for respondent.

Michael F. Cromett, St. Paul, for appellant.

Considered and decided by DAVIES, P.J., and PARKER and FOLEY *, JJ.

## OPINION

FOLEY, Judge.

Gene Alan Brovold appeals his conviction of criminal sexual conduct in the first degree. He contends the trial court erred in determining a three-year-old child was competent to testify, allowing experts to testify regarding the abused child's truthfulness, and imposing the presumptive sentence. Brovold also maintains the evidence was insufficient to sustain the verdict. We affirm.

### FACTS

Brovold and his wife Ellen were married three times and divorced twice. They had two children: three-year-old C.B. and fourteen-year-old M.B. C.B. was born on March 18, 1987.

On August 1, 1990, Brovold was sleeping alone in the couple's bed. Testimony shows he usually slept downstairs on a back porch; however, this night was hot and Brovold wanted to sleep in the air conditioning. Ellen testified she told Brovold to sleep in their bed and that she would sleep with C.B. During the night C.B. awoke and told her mother she wanted

---

* Retired judge of the Court of Appeals, acting by appointment pursuant to Minn. Const. art. VI, § 2.

to sleep with her father. She left her mother and climbed into bed with Brovold.

Ellen testified she woke up later in the night to hear C.B. say "Daddy, why are you poking me?" Ellen called C.B. back to her bed. C.B. returned to her bed, where she and her mother went back to sleep. Nothing more was said about the incident that night.

The next day, Brovold went to work and Ellen talked with C.B. about what had happened the previous night. Ellen testified C.B. told her that Brovold held her tight and poked her with his finger. M.B., C.B.'s older sister, testified that C.B. told her that her father had poked her at least four times in her vagina and in her backside. Ellen testified that upon hearing this she called child protection. On September 6, a child protection worker came to the Brovold house to investigate. He asked C.B., among other things, while pointing at the genital area of an anatomically correct doll, whether anyone had ever touched her in a bad way. C.B. refused to talk or interact with him in any manner after that.

That same day, Dr. Linda Thompson, a pediatrician at the Hennepin County Medical Center, examined C.B. While Ellen was not in the examination room, Dr. Thompson asked C.B. if anyone had touched her. Thompson testified C.B. told her, her daddy had touched her "down here and it hurts." Thompson testified C.B. demonstrated how her Daddy touched her by moving her finger around her vaginal area. Thompson also found an injury to C.B.'s vaginal area consistent with C.B.'s comments.

Brovold was charged with criminal sexual conduct in the first degree on September 20, 1990. At a pretrial competency hearing on January 15, 1991, the trial court denied Brovold's motion to strike C.B.'s testimony and determined that the three-year-old was competent to testify. The jury trial commenced on January 17, 1991. The jury returned a guilty verdict on January 23, 1991. The trial court denied Brovold's motion for a new trial, acquittal, or downward departure on February 22, 1991. That same day, the trial court sentenced Brovold to 86 months in prison and entered judg-ment. This appeal is from the February 22, 1991, judgment.

## ISSUES

1. Did Brovold waive his right to appeal the issue of the child's incompetency per se?

2. Did the trial court err when it found a three-year-old child a competent witness and allowed the child's testimony into evidence?

3. Did the trial court err by allowing into evidence an expert witness's testimony regarding the child's truthfulness?

4. Was the evidence sufficient to convict Brovold of first degree criminal sexual conduct?

5. Did the trial court err by imposing the presumptive sentence under the Minnesota Sentencing Guidelines?

## ANALYSIS

1. The state argues Brovold failed at trial to raise the issue that C.B. is incompetent per se because she is three years old. Therefore, the state argues, because this issue has not been litigated and is raised for the first time on appeal, Brovold waived his right for this court to consider the issue.

A party cannot raise an issue for the first time on appeal. *Morton v. Board of Comm'rs*, 301 Minn. 415, 427, 223 N.W.2d 764, 771 (1974). A timely objection and an offer of proof are required to preserve evidentiary issues on appeal. Minn. R.Crim.P. 26.03, subd. 14. This court considers "only those issues that the record shows were presented and considered by the trial court." *Thayer v. American Fin. Advisors, Inc.*, 322 N.W.2d 599, 604 (Minn. 1982).

The issue of whether C.B. is incompetent per se is appropriately before this court. It is clear in the pretrial competency hearing transcripts that Brovold's counsel argued the child was incompetent per se. Brovold's counsel referred to an earlier case and stated:

Th[e] court had found that the three-and-a-half year old was, as a matter of law, not competent to testify but found that the five-year-old was competent to relate what had happened to the three-and-a-half year old and, of course, the court of appeals found that [the trial court] did not abuse his discretion in finding the five-year-old competent. * * * [B]etween three and a half and five years that's kind of the dividing line where I haven't seen a judge go below four years old in the cases that I have seen.

After the trial court made its ruling that C.B. was competent, the transcript shows Brovold's counsel also reiterated his objections.

[Brovold's counsel:] I brought the motion to exclude testimony based upon competency, reliability and so forth. The Court has made a ruling. I want to reiterate my objections, lest I be deemed in a court of appeals for some technical reason to have waived them.

The record clearly shows the issue of incompetency per se was litigated and, therefore, Brovold did not waive his right to appeal. *See Thorp v. Price Bros. Co.*, 441 N.W.2d 817, 819 (Minn.App.1989) *pet. for rev. denied* (Minn. Aug. 15, 1989) (Issue discussed and ruled on was proper subject of appeal, despite appellant's failure to present arguments on issue at the trial level.).

■ 2. A finding of a child's competency as a witness is within the trial court's discretion and will not be reversed absent a clear abuse of discretion. *State v. Cermak*, 350 N.W.2d 328, 332 (Minn.1984). Brovold maintains the trial court abused its discretion when it ruled his three-year-old daughter was competent to testify. Brovold argues a three-year-old is per se incompetent to testify, citing various medical journals to support the proposition that at a certain minimum stage all children are incompetent to testify. Minn.Stat. § 595.02 (1990), however, does not establish a minimum age and we decline to determine a minimum age here.

Minnesota law provides:

A child under ten years of age is a competent witness unless the court finds that the child lacks the capacity to remember or to relate truthfully facts respecting which the child is examined. A child describing any act or event may use language appropriate for a child of that age.

Minn.Stat. § 595.02, subd. 1(k), (*l*) (1990). "The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature." Minn.Stat. § 645.16 (1990). The legislature clearly contemplated a case by case determination of a witness's competency. While Brovold points to scientific journals to support his proposition, they would perhaps be better brought to the attention of a legislative committee. This court's role is to interpret the legislative intent.

■ Minn.Stat. § 595.02, subd. 1(k), (*l*) requires a two-part analysis in determining a child's competency to testify. *State v. Struss*, 404 N.W.2d 811, 814 (Minn.App. 1987), *pet. for rev. denied* (Minn. June 9, 1987). The trial court must conclude the child witness has: (1) the capacity to tell the truth, and (2) the ability to recall the facts. *Id.* Brovold contends his daughter did not have the ability to tell the truth or recall the facts. Here, the transcript shows that C.B. knew the difference between the truth and a lie.

[Judge:] * * * I tell you that's a paint brush, is that the truth or is that not the truth?

[C.B.:] That's not the truth.

[Judge:] It's not true?

[C.B.:] No.

[Judge:] What is this I am holding up?

[C.B.:] A pen.

[Judge:] If I tell you that I am a woman, is that the truth or not the truth?

[C.B.:] (Shaking head.)

[Judge:] What am I?

[C.B.:] A man.

[Judge:] If I tell you that this pen is red, is that the truth or not the truth?

[C.B.:] No.

[Judge:] Is that true?

[C.B.:] No.

[Judge:] If I tell you your shirt is red, is that true?

[C.B.:] (Shaking head.)

[Judge:] What color is your shirt?

[C.B.:] Green.

This clearly shows, as the trial court ruled, that C.B. recognized the difference between the truth and a lie. Brovold argues that C.B. did not appreciate the duty to tell the truth, evidencing C.B. was incompetent. The testimony only shows, however, that C.B. did not know the consequences of not telling the truth. She knew the difference between the truth and a lie.

[Judge:] What would happen at home if you told your mom or your dad a lie? Would that be okay with them or would they be mad at you if you told a lie?

[C.B.:] They would be mad, and if I said I did they would be happy if I said sorry.

[Judge:] If you said sorry, what would happen?

[C.B.:] My family would say that's all right.

[Judge:] Oh, if you told a lie and said you were sorry, is that what you are saying?

[C.B.:] Nope. If I said sorry, that means my family is happy.

  *  *  *  *  *  *

[Judge:] Is that good or bad to tell the truth?

[C.B.:] Good.

[Judge:] And if you tell something that is a lie and that's not true and maybe you use the word fib or whatever you would use, but if you would use, but if you tell something that's not the truth, is that good or is that bad to tell something that's not the truth?

[C.B.:] Bad.

The law also requires that C.B. be able to relate facts. Brovold argues C.B.'s testimony shows she had difficulty with the concept of time, and some facts. Time is irrelevant in first degree criminal sexual conduct. The jury needed only to consider whether the incident occurred. That C.B. could not relate time accurately does not indicate she does not know what happened. While she did not correctly remember a few names of those around her, these people were not a significant part of her daily life. She could adequately relate facts regarding events. In reviewing the transcript, we hold the trial court did not abuse its discretion in its determination that C.B. was competent to testify. Brovold's request to strike C.B.'s testimony was properly denied.

3. Brovold argues the trial court abused its discretion because it allowed into evidence expert testimony about truthfulness. The admissibility of an expert's testimony is within the discretion of the trial court. *Seelye v. State*, 429 N.W.2d 669, 673 (Minn. App.1988). Minn.R.Evid. 702 provides that expert testimony is admissible if it will aid the jury in understanding the evidence or determining a fact issue. Under Minn. R.Evid. 403, the trial court may also find that even if the evidence aids the jury, the relevant evidence may be excluded because its "probative value is substantially outweighed by the danger of unfair prejudice" or is misleading to the jury.

> If the subject of the testimony is within the knowledge and experience of a lay jury and the testimony of the expert will not add precision or depth to the jury's ability to reach conclusions about that subject which is within their experience, then the testimony does not meet the helpfulness test.

*State v. Helterbridle*, 301 N.W.2d 545, 547 (Minn.1980). If the jury is in as good a position to reach a decision as the expert, expert testimony would be of little assistance to the jury and should not be admitted.

*State v. Saldana*, 324 N.W.2d 227, 229 (Minn.1982).

■ First, Brovold argues the expert's testimony concerning C.B.'s failure to identify her father as the abuser is inadmissible. The record shows that C.B. failed to identify Brovold at trial. Two experts testified that this could be a result of child abuse. Brovold maintains the testimony concerning the child's failure to remember addresses the child's truthfulness.

■■ Expert testimony about a child's truthfulness is generally inadmissible because it tends to give scientific legitimacy to the allegations regarding truthfulness. *State v. Myers*, 359 N.W.2d 604, 611 (Minn. 1984). Expert testimony on the truthfulness of children in general is also improper. *Adesiji v. State*, 384 N.W.2d 908, 911–12 (Minn.App.1986), *pet. for rev. denied* (Minn. June 13, 1986). Expert testimony, however, about a sexually abused child's emotional and psychological characteristics is admissible. *Myers*, 359 N.W.2d at 610–11. Credibility determinations are within the province of the jury. *Saldana*, 324 N.W.2d at 231. Brovold refers to two places in the transcript.

First, Brovold's counsel objected to cross examination questions directed to Dr. ten Bensel concerning the effect of sexual penetration on C.B.'s memory. The objection was denied and Brovold's counsel made an offer of proof:

> Dr. ten Bensel says that neither he nor anyone is competent to testify relative to someone else's memory lapse or trauma or anything else. He is as qualified as anybody to take a gander at it, to take a swing at it, but Dr. ten Bensel is very uncomfortable [with this].

Second, Brovold objected to the testimony of Mindy Mitnick, a psychologist and expert in the interviewing and evaluation of abused children. Brovold argues that the testimony concerns the truthfulness of children in similar situations, therefore it is inadmissible. The testimony, however, clearly concerns the effect of child abuse on a child's behavior and recollection:

> [I]f a child has not seen someone in an extended period of time, their ability to recall what that person looks like could be impaired. Related to that and maybe interrelated with that is that young children store information in memory that they recall in a different way than adults do, and they then have more difficulty recalling the information compared to adults. One of the characteristics of very young children's thinking is that they focus on single aspects of things and situations, and so one of the possibil-

ities is that if the child's father looked different to her than when she last saw some feature was different; his clothing was different, his facial features were different, something that was significant to her in her view of what her father looked like. She might believe that this was not her father that she was seeing, or somebody maybe who looked like him, but not somebody who was her father, and she might then say "No, that's not my father." * * * [D]isassociation is a very, very common way that sexual abuse victims, especially children, cope with that kind of stress and upset and anxiety, and so it may have come to a point in Christine's testimony where she needed to talk about something that she couldn't recall because she had locked it away.

The trial court correctly stated:

> I am concluding that whatever happened in the courtroom is a phenomenon that is entitled to some expert explanation, whether it comes from Ms. Mitnick or Dr. ten Bensel or any other qualified expert.

We hold the trial court did not abuse its discretion when it allowed expert testimony concerning the effect of sexual abuse on C.B. or any child's recollection of the crime. The trial court correctly allowed the jury to weigh the evidence and determine each witness's credibility because the testimony involved a psychological characteristic rather than the truthfulness of a witness.

■■ 4. Brovold contends the evidence is insufficient to sustain his conviction for first degree criminal sexual conduct. When reviewing a jury verdict in a criminal case where the claim on appeal is insufficiency of the evidence, this court must

> determine whether, under the facts in the record and any legitimate inferences that could be drawn from them, a jury could reasonably conclude that the defendant was guilty of the offense charged. *State v. Merrill*, 274 N.W.2d 99 (Minn. 1978). The evidence must be viewed in the light most favorable to the prosecution and it is necessary to assume that the jury believed the state's witnesses

and disbelieved any contrary evidence. *State v. Wahlberg*, 296 N.W.2d 408 (Minn.1980).

*State v. Ulvinen*, 313 N.W.2d 425, 428 (Minn.1981), *quoted in State v. Race*, 383 N.W.2d 656, 661 (Minn.1986); *see also State v. Bias*, 419 N.W.2d 480, 484 (Minn. 1988). Before sustaining the verdict, the court

> must conclude that the jury, acting with due regard for the presumption of innocence and the necessity of overcoming it by proof beyond a reasonable doubt, could reasonably have found the defendant was proven guilty of the offense charged.

*Race*, 383 N.W.2d at 662 (citations omitted).

Here, we are asked to determine whether the jury could conclude beyond a reasonable doubt that Brovold was guilty of first degree criminal sexual assault. *See Adesiji*, 384 N.W.2d at 911. Minnesota law provides:

> A person who engages in sexual penetration with another person is guilty of criminal sexual conduct in the first degree if * * *:
>
> \*     \*     \*     \*     \*     \*
>
> (g) the actor has a significant relationship to the complainant and the complainant was under 16 years of age at the time of the sexual penetration. Neither mistake as to the complainant's age nor consent to the act by the complainant is a defense.

Minn.Stat. § 609.342, subd. 1 (1990). Minn. Stat. § 609.341, subd. 12 (1990) defines "sexual penetration" as

> any intrusion however slight into the genital or anal openings of the complainant's body of any part of the actor's body or any object used by the actor for this purpose, where the act is committed without the complainant's consent, except in those cases where consent is not a defense. Emission of semen is not necessary.

The evidence here is sufficient for a jury to find Brovold guilty of first degree criminal sexual assault. It is undisputed Brovold had a significant relationship with C.B. because Brovold was her father. C.B. was under 16 years of age at the time of the sexual penetration. She was only three years old.

The jury also heard C.B.'s testimony that Brovold sexually penetrated her, along with the corroborating testimony of her mother and sister. Their testimony was bolstered by two experts' testimony: Linda Thompson, M.D., who examined C.B., and Mindy Mitnick, a psychologist with an expertise in interviewing child abuse victims. Brovold's defense included an expert, Robert ten Bensel, M.D., who cast doubt on the state's experts. However, the credibility of a witness is a question for the jury to decide. *Saldana*, 324 N.W.2d at 229. The jury obviously believed the state's witness when it found Brovold guilty of first degree criminal assault. It is clear from the record that the evidence is sufficient for a jury to reasonably find Brovold guilty.

■ 5. Brovold argues the trial court abused its discretion by following the presentence investigation recommendation and sentencing him to the presumptive sentence under the sentencing guidelines. Brovold maintains the trial court should have durationally departed to second degree criminal sexual conduct because his conduct most closely resembles this offense.

■ The objective of the sentencing guidelines "is to establish rational and consistent sentencing standards." Minn.Sent. Guidelines I. The presumptive sentence is to be applied in most cases. *State v. Peake*, 366 N.W.2d 299, 301 (Minn.1985). The sentencing guidelines list several nonexclusive factors to justify a downward departure:

> (1) The victim was an aggressor in the incident.
>
> (2) The offender played a minor or passive role in the crime or participated under circumstances of coercion or duress.
>
> (3) The offender, because of physical or mental impairment, lacked substantial capacity for judgment when the offense was committed. The voluntary use of intoxicants (drugs or alcohol) does not fall within the purview of this factor.

Minn.Sent. Guidelines II.D.2.a.

■ To justify a downward departure there must be substantial and compel-

ling circumstances. *Peake*, 366 N.W.2d at 301; Minn.Sent. Guidelines I.

Substantial and compelling circumstances are those circumstances that make the facts of a particular case different than a typical case.

*Peake*, 366 N.W.2d at 301. While there may be grounds to justify departure, we usually do not interfere with a sentence in the presumptive range. *Herme v. State*, 384 N.W.2d 205, 208–09 (Minn.App.1986), *pet. for rev. denied* (Minn. May 22, 1986).

In the present case, Brovold was convicted of first degree sexual penetration of his three-year-old daughter. The jury believed the three-year-old, her sister and their mother concerning the circumstances. The three-year-old climbed in bed with her father and Brovold allegedly poked her vagina and her backside with his finger. While Brovold argues that this situation was more like second degree criminal sexual conduct, Brovold was convicted by a jury of the offense charged. His argument does not excuse or mitigate his culpability. The facts here are not significantly different from the typical case to constitute a substantial and compelling reason for departure. The trial court record here supports the presumptive sentence.

### DECISION

Minn.Stat. § 595.02, subd. 1(k), (*l*) does not provide for a minimum age threshold for competency, and we decline to establish a minimum age here. Expert testimony regarding the effect of child abuse on a child's recollection and memory is admissible for the purposes of a jury's further understanding of the effects of child abuse. The evidence sufficiently supports Brovold's conviction and the trial court appropriately followed the sentencing guidelines in determining Brovold's sentence.

*Affirmed.*