*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1754**

State of Minnesota,
Respondent,

vs.

Edgar Arturo Cano-Fernandez,
Appellant.

**Filed August 10, 2015
Affirmed
Bjorkman, Judge**

Watonwan County District Court
File No. 83-CR-14-36

Lori Swanson, Attorney General, Matthew Frank, Assistant Attorney General, St. Paul, Minnesota; and

Nicholas A. Anderson, Cottonwood County Attorney, Windom, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jennifer Workman Jesness, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Johnson, Presiding Judge; Bjorkman, Judge; and Kirk, Judge.

**U N P U B L I S H E D   O P I N I O N**

**BJORKMAN**, Judge

Appellant challenges his convictions of first- and second-degree criminal sexual conduct, arguing that the child complainant was not competent to testify. We affirm.

# FACTS

In October 2013, I.C. moved from Texas to Minnesota with her four-year-old daughter, A.V.; her niece, E.C.; and appellant Edgar Arturo Cano-Fernandez. All four moved into Cano-Fernandez's cousin's home. Initially, E.C. cared for A.V. while I.C. worked the night shift. When E.C. moved out of the house in November, Cano-Fernandez assumed partial responsibility for A.V.'s care. In December, I.C. made plans to return to Texas in mid January. She purchased airplane tickets for herself and A.V. and told Cano-Fernandez that they would be leaving.

Several days before their scheduled departure, A.V. told I.C. that she did not want to be left with Cano-Fernandez because he was "a bad person," and that when I.C. was away he did "bad things to her." A.V. explained that Cano-Fernandez pulled her pants down and "put his private parts . . . on her," and showed her mother how Cano-Fernandez positioned her. A.V. also said that he told her not to tell I.C. "because then God was going to get mad at her." A.V. complained of vaginal soreness, and I.C. recalled seeing vaginal discharge when bathing A.V. around that time. I.C. took A.V. to the emergency room that night to have her examined and report the abuse.

When I.C. and A.V. returned to Texas several days later, A.V. was examined by a sexual-assault nurse. A.V. told the nurse that "Arturo" had twice touched her with his "wee-wees" and pointed to her vaginal area and buttocks. She said that she had felt pain, but the nurse did not observe any signs of trauma.

Cano-Fernandez was charged with multiple counts of first-degree and second-degree criminal sexual conduct. The district court found A.V., then five years old,

competent to testify. After a bench trial during which I.C. and the sexual-assault nurse also testified, the district court acquitted Cano-Fernandez of two counts of first-degree criminal sexual conduct (penetration) but found him guilty of two counts of first-degree criminal sexual conduct (contact), and two counts of second-degree criminal sexual conduct (contact).[1] Cano-Fernandez appeals.

## D E C I S I O N

"Determination of witness competency rests in the discretion of the trial judge whose finding will not be reversed unless it is a clear abuse of discretion." *State v. Carver*, 380 N.W.2d 821, 824 (Minn. App. 1986), *review denied* (Minn. Mar. 27, 1986).

A child witness is presumed competent "unless the court finds that the child lacks the capacity to remember or to relate truthfully facts respecting which the child is examined." Minn. Stat. § 595.02, subd. 1(n) (2014); *State v. Scott*, 501 N.W.2d 608, 613 (Minn. 1993) (noting prior presumption that children under age ten were not competent to testify). In determining competency, a district court considers whether the child has (1) the capacity to tell the truth and (2) the ability to recall facts. *State v. Sime*, 669 N.W.2d 922, 926 (Minn. App. 2003). This is a general determination, unrelated to the subject matter of the case. *Scott*, 501 N.W.2d at 615. Accordingly, courts typically inquire about matters such as the child's name, where she goes to school, how old she is, whether she knows who the judge is, whether she knows the difference between the truth and a lie, and whether she knows what happens when one tells a lie. *Id.* (citing *Kentucky*

---

[1] During the investigation of A.V.'s report, Cano-Fernandez twice told police his name was Geofrey Hoglund. He was convicted of giving a peace officer a false name and does not challenge that conviction on appeal.

*v. Stincer*, 482 U.S. 730, 741-42, 107 S. Ct. 2658, 2665-66 (1987)).  But a child's inability to answer some of these questions does not necessarily indicate incompetency. *See State v. Brovold*, 477 N.W.2d 775, 778-79 (Minn. App. 1991) (affirming competency determination when three-year-old sexual-misconduct victim's responses indicated she knew the difference between the truth and lie, but not the consequences of not telling the truth, and could adequately relate facts regarding events, though she struggled with time and some names), *review denied* (Minn. Jan. 17, 1992).  "Where the court is in doubt as to the child's competency, it is best to err on the side of determining the child to be competent." *State v. Lanam*, 459 N.W.2d 656, 660 (Minn. 1990).

Cano-Fernandez argues that the district court abused its discretion in determining A.V. was competent to testify because her inaccurate and tangential answers to the district court's questions indicate that she lacked a full understanding of the concept of the truth and the ability to recall facts.  We disagree.  First, Cano-Fernandez's assertion that A.V.'s responses were inaccurate or tangential relies heavily on the portion of the district court's examination that was conducted in English, A.V.'s second language.  And even in response to those questions, A.V. accurately stated her name, appropriately answered the question about her activities, and accurately stated her age.

Second, and more importantly, once the Spanish language interpreter became involved, A.G.'s responses demonstrated that she has the requisite capacities.  A.V. accurately indicated that it would be a lie, not the truth, to say that the judge's robe was pink and it would be a lie to say she lived in California and the truth to say she lived in Texas.  She repeatedly stated that it is good to tell the truth and not good to lie.  She

expressed some initial confusion about the concept of a promise but accepted the judge's explanation that a promise "means that you tell somebody you will do something" and agreed that she would promise to tell the truth. After agreeing that she would "never tell a lie," A.V. made statements about bathing herself, watching television, and playing outside, that did not respond to any pending question.

The district court noted A.V.'s young age and the somewhat confused responses she gave to certain questions, but ultimately found that she understood the difference between the truth and a lie, promised to tell the truth, and was able to relate past events. The district court also expressly attributed her occasional confusion to context, rather than incompetence. Because the record amply supports those findings, we conclude the district court did not abuse its discretion by determining that A.V. was competent and permitting her to testify.

**Affirmed.**