*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-0180**

State of Minnesota,
Respondent,

vs.

Jeffrey Scott Baker,
Appellant.

**Filed February 5, 2024
Affirmed
Segal, Chief Judge**

Hennepin County District Court
File No. 27-CR-21-16751

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Mary F. Moriarty, Hennepin County Attorney, Kelly O'Neill Moller, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Andrea Barts, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Reyes, Presiding Judge; Segal, Chief Judge; and Connolly, Judge.

**NONPRECEDENTIAL OPINION**

**SEGAL**, Chief Judge

In this direct appeal from the judgment of conviction for second-degree criminal sexual conduct, appellant challenges the district court's decision to allow the state to offer expert testimony concerning the typical behaviors of children in reporting that they have

been sexually assaulted. Because we discern no abuse of discretion by the district court in its determination that the testimony would be helpful and not unfairly prejudicial, we affirm.

**FACTS**

Respondent State of Minnesota charged appellant Jeffrey Scott Baker in 2021 with sexually assaulting his daughter (the child) on three different occasions.[1] The complaint alleged that the offenses occurred between July 13, 2015, and July 12, 2017, when the child was seven to nine years old. The child first disclosed the assaults four to five years after they occurred, and only incrementally provided additional details.

The child first disclosed the sexual assaults to a friend from school when the child was around 12 years old. A few months later, she told an aunt. In both initial disclosures, the child offered only a general description of being assaulted; it was not until she testified at trial that she affirmatively acknowledged that Baker touched the skin on the outside and inside of her vagina.

After the child's disclosure, the aunt reported the assaults to law enforcement, and the child was then referred to CornerHouse for a forensic interview. The child shared more detail with the forensic interviewer at CornerHouse but, even then, the child did not tell the forensic interviewer that Baker had touched her vagina "inside, outside, skin"—

---

[1] The initial complaint contained one count of second-degree criminal sexual conduct in violation of Minn. Stat. § 609.343, subd. l(a) (2016) (sexual contact with complainant under 13 and actor more than 36 months older). Before the start of the trial, the state amended its complaint to add a count of second-degree criminal sexual conduct in violation of Minn. Stat. § 609.343, subd. l(h)(iii) (2016) (significant relationship, complainant under 16 at time of sexual contact, multiple acts over extended period of time).

just that he had touched her vagina generally. She told the interviewer that Baker had touched her "inappropriately" and indicated on a body diagram where she was touched. The child also told the interviewer that she had "asked [Baker] to stop and he said, okay, don't tell anybody." When asked why she did not tell anyone about the assaults earlier, the child stated she was "scared," but eventually allowed her aunt to report it because she "didn't want that to happen" to any other girls. The child expressed her concern for the safety of the young daughters of Baker's girlfriend, who were living with him at the time.

At trial in 2022, the child provided more detail about the scope of Baker's assaults. Echoing her previous disclosures, the child testified that two of the assaults occurred at her grandparent's house in Richfield, and the third occurred at a cabin the family rented near Alexandria. She also added that, during each assault, Baker touched her vagina with his fingers and hands both inside and outside of the pajamas she was wearing and that he touched her inside her vagina. She also stated that, after the first assault, Baker told her not to tell anyone. She explained, similar to the statements she made during the CornerHouse interview, that she did not come forward earlier because she was "afraid" and "didn't know what the consequences would be or if I would be believed or not." She testified that she ultimately disclosed the assaults because she was "scared for what would happen" to the daughters of Baker's current girlfriend, with whom he was living.

Because of the child's delayed and incremental disclosure of her sexual assaults, the state filed a motion to admit expert testimony by the forensic interviewer about the counterintuitive patterns of disclosure displayed by sexually abused children. Baker

3

objected, arguing that the forensic interviewer's testimony would amount to improper vouching and be unfairly prejudicial. The district court granted the state's motion.

The forensic interviewer then testified at trial that "[i]t is very common for a young person to delay reporting what they have experienced." The interviewer noted that it is uncommon for children to tell all the details of their assault in "one fell swoop." She explained that "[t]hey give [information] in small increments" and, because children have concerns people will not believe them, "they often first tell a peer—someone their own age or someone they can test."

In addition to the child and forensic interviewer, the witnesses at trial included the friend the child first confided in, the child's aunt and grandfather, the police officer who investigated the case, and Baker. A video of the CornerHouse interview was also played for the jury. The jury found Baker guilty, and the district court sentenced him to 90 months in prison.

## DECISION

The sole issue on appeal is whether the district court abused its discretion when it allowed expert testimony about delayed reporting pursuant to rule 702. Baker argues that the testimony was not helpful because it was well within the common knowledge of a jury and it was highly prejudicial because it allowed the forensic interviewer to vouch for the veracity of the child's testimony.[2]

---

[2] At the district court, Baker argued that the forensic interviewer is not an expert because she is not a psychiatrist or child psychologist, and thus her testimony would be speculative. The district court concluded that the forensic interviewer was qualified, and Baker does not challenge the expertise of the witness on appeal.

Appellate courts review the admissibility of expert testimony under rule 702 for an abuse of discretion. *State v. Thao*, 875 N.W.2d 834, 840 (Minn. 2016). "A district court abuses its discretion when its decision is based on an erroneous view of the law or is against logic and the facts in the record." *State v. Garland*, 942 N.W.2d 732, 742 (Minn. 2020) (quoting *State v. Guzman*, 892 N.W.2d 801, 810 (Minn. 2017)). On appeal, the appellant has the burden of showing (1) the district court abused its discretion by admitting the challenged expert testimony, and (2) that the error prejudiced the defendant. *State v. Sanders*, 775 N.W.2d 883, 887 (Minn. 2009).

Expert testimony is admissible under rule 702 if it meets four criteria: "(1) the witness is qualified as an expert; (2) the expert's opinion has foundational reliability; (3) the expert testimony is helpful to the jury; and (4) if the testimony involves a novel scientific theory, it must satisfy the *Frye-Mack* standard." *State v. Obeta*, 796 N.W.2d 282, 289 (Minn. 2011). Expert testimony is helpful when it is "outside the common knowledge of the jury" and unhelpful if it will not aid the jury in reaching a conclusion. *Id.* at 289, 292.

The district court determined that the proposed testimony satisfied the requirements of rule 702, reasoning that the expert testimony would be helpful to the jury based on established caselaw that "the behavior of allegedly sexually abused children, . . . —for example, delayed disclosures—[is] not a common understanding for adults." The district court cited to cases such as *State v. Myers*, 359 N.W.2d 604, 609-11 (Minn. 1984), which held that expert testimony about the behavior and characteristics typical of sexually abused adolescents can be admissible because it is outside the common experience of a jury; and

5

*State v. Reyes*, 890 N.W.2d 406, 412-13 (Minn. App. 2017), which affirmed the admission of expert testimony about common characteristics of sexually abused adolescents because it "helped the jury t[o] understand delayed reporting and circumstances of . . . abuse." *See also Obeta*, 796 N.W.2d at 291-94 (noting that expert testimony "on the typicality of delayed reporting . . . may be helpful to the jury").

Baker argues, nevertheless, that this case should be treated differently because the child was able to explain at trial the reasons for the delay in her reporting and the jury also heard the explanation she gave during her CornerHouse interview. Baker argues that the jury could understand this testimony and did not need to hear from an expert. But, even with the child's explanations, understanding how sexually abused children typically behave with regard to disclosing such abuse remained outside the common knowledge of the adult jurors. The testimony was thus helpful to the jury as in assessing the child's credibility. Expert testimony in cases involving abuse is not "duplicative of prior testimony; rather, it [is] necessary to explain the complexity of [the victim's] behavior." *State v. Grecinger*, 569 N.W.2d 189, 195 (Minn. 1997). The district court's determination that the testimony would be helpful is therefore consistent with case precedent and was not an abuse of discretion.

We also discern no abuse of discretion in the district court's determination that Baker would not be unfairly prejudiced by the testimony. As stated in its ruling, the district court specifically limited the expert testimony to prevent prejudice based on the state's "own agreement and acknowledgement that they would not be seeking any testimony specific to this victim with respect to some sort of vouching or believability." The expert

6

testimony provided by the forensic interviewer related only to the typical reaction of children to sexual assault. She did not testify about the credibility of the child's reactions in this case. As such, the testimony did not amount to impermissible vouching. *See State v. Vick*, 632 N.W.2d 676, 689-90 (Minn. 2001) (concluding expert testimony about the common behaviors of adolescent victims of sexual abuse is not impermissible vouching); *see also State v. Ferguson*, 581 N.W.2d 824, 836 (Minn. 1998) (concluding an officer did not impermissibly vouch for other witness' credibility as the officer did not state he believed one witness over another). Moreover, to the extent that Baker argues that the expert testimony "substantially influenced" the jury, that is not itself unfair prejudice. *See State v. Brovold*, 477 N.W.2d 775, 780 (Minn. App. 1991) (affirming admission of expert testimony in a child sexual-abuse case because the district court "allowed the jury to weigh the evidence and determine each witness's credibility," and "because the testimony involved a psychological characteristic rather than the truthfulness of a witness"), *rev. denied* (Minn. Jan. 17, 1992).

The admission of the forensic interviewer's expert testimony concerning the counterintuitive behaviors of children in reporting sexual abuse was not an abuse of discretion.

**Affirmed.**